THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT GANGESTAD, Defendant-Appellant.

Second District   No. 80-584

Opinion filed April 14, 1982.

A. J. Marco, of Marco and Mannina, of Downers Grove, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert Anderson, Charles Emery, and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a jury trial, the defendant, Robert Gangestad, was convicted of murder and thereafter sentenced to a term of 40 years in prison. He appeals, contending that he was not proved guilty of accountability for

the murder beyond a reasonable doubt, that his motion to suppress his statement was improperly denied, that numerous trial errors deprived him of a fair trial, that the statute (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(2)) under which he was convicted of killing a fellow county jail inmate, providing the possibility of a death penalty, was unconstitutionally vague; and, alternatively, that his sentence was disparate.

Scott Brunoehler, an inmate of the Du Page County jail, was found hanged in his cell on May 21, 1979. The defendant, and two other inmates, William Hopson and James Devin, were indicted for his murder. (Hopson pled guilty pursuant to a plea bargain and was sentenced to 20 years; Devin was tried and sentenced to death.)

Several residents of the jail tier, #1 East, testified. They related that, on the 20th of May, 1979, a fight broke out between defendant and another inmate, over a bed; a sheet was bloodied; defendant and another tore the sheet, flushed part down a toilet; the remainder was later seen being braided by defendant and Devin. Later, defendant and Hopson were seen holding the victim down and Devin was seen with the braided sheet in his hand.

Defendant was holding the blanket, holding the victim to the bed. Hopson was holding the victim's feet. Devin, Hopson and defendant picked up the victim, who was "folded" at the waist, in the blanket, dragging him to a picnic table in the common area. Devin ran the "rope" through the light fixture and defendant and Hopson boosted the victim and he was left hanging. Defendant, Hopson and Devin returned to their bunks. Later the guards came through, found the victim hanging and cut him down.

One of the witnesses testified that when he saw Devin and the others at the victim's bunk, Devin had the rope attached to the victim's neck, and he heard defendant then say "Stop, stop," and Devin answer, "If we don't kill him now, we'll get it for attempted murder."

Hopson testified that he told the officers that the victim had talked of becoming an informant to secure his release from jail since his family was not helping. An inmate testified that the victim had earlier said "I'm going to hang myself." Another inmate said Devin responded, "That can be arranged." Both Hopson and another inmate testified that Devin also said, in defendant's presence, just before Devin placed the rope around the victim's neck, "narcs don't make it."

An inmate also testified that earlier in the day defendant and Devin were braiding the sheet into a rope, then pulled the rope between them, with Devin commenting, "It was strong enough." Another, that defendant was striking the victim while the victim was on the bed.

The State established by the testimony of Dr. Loren Henley, a pathologist, that various marks on the victim's neck were made while he was

alive; that the cause of death was hypoxia, lack of oxygen to the brain caused by tying a rope around the neck which shut off the victim's blood supply.

John Rotunno, an investigator for the State's Attorney's office, testified that he and another investigator, Cresto, interviewed defendant at an interview room at the jail on June 7, 1979; that he was given *Miranda* warnings immediately and read and signed a waiver; that he and Cresto asked why they had been asked to come to see defendant, and defendant answered that he had spoken to his attorney and had been told to cooperate to the fullest extent; that defendant said he wanted the State to know that a "blanket party" was supposed to be thrown for the victim. In answer to the investigator's inquiry, defendant agreed to "go over the events which transpired on May 20th and 21st" and "would go over the statement with us." (A statement taken on June 5, 1979, had been suppressed by the court, because there was no waiver of counsel who had been appointed and was not notified.) The officer testified that defendant related the fight over the bed, the partial flushing of the sheet; that later he heard Devin say "How much can I get for this snitch" and said "There's going to be a lynching tonight * * * and the snitch is going to be lynched"; that later Devin told defendant to get a piece of sheet to braid, he helped braid it and both he and Devin tested it; at about 1 a.m. on the 21st Devin came to defendant and said, "Let's do it now"; that defendant said, "No he's still up" and heard someone say a blanket party would be better. Hopson took the victim's feet, and, at Devin's request, defendant held on to his arms; that Devin put the noose over the victim's neck and began strangling him, whereupon defendant said "Stop," but Devin said "We can't stop or else they'll get us for attempt murder." Defendant noticed the victim had urinated over himself while on the bed, said "Stop he's dead," but Devin said "Let's go hang him in the dayroom before the guards come." He then related the hanging. Asked by the interrogator why he didn't stop it, defendant said, "I could have stopped it. I could have either yelled for the guards or I could have hit Devin in the face." The officer, however, took no notes and did not mention the "stopping" statement in his report. John Cresto testified essentially to the same facts.

Defendant testified at trial that he was 18, had pled guilty to aggravated battery with a 75-day sentence and was due to be released on May 23, 1979. He related the fight over the bed, the ripping of the sheet in half, that an inmate was supposed to flush the other half also; that it could have been used for a headband, or jump rope, or to fasten a door shut; then it was placed under Devin's bed. The next time defendant saw it, it was around the victim's neck. Later Devin came to his bunk, and he answered he was ready, thinking it was a "blanket party"; he hit the victim three or four times; then he saw Devin take the rope and put it around the victim's

neck, and defendant told him to stop; that Devin said "it's too late now." That Devin continued for 4 or 5 seconds and it was the end. Defendant was too scared then to stop Devin. No more than 10 seconds elapsed from when defendant first saw the rope in Devin's hand to when the victim turned blue and went limp on the bed. The victim appeared to be dead. Devin told him to pick the victim up before the guard came. He did, and Devin pulled the victim up. Defendant denied that he told Rotunno that he could have stopped it or yelled for a guard, or that he spoke of a "lynching."

## I

Defendant contends that the evidence is insufficient to prove beyond a reasonable doubt that he either intended to kill or do great bodily harm, or that he knew that his acts created a strong probability of death, as required under section 9—1(a)(1), (a)(2) of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1), (a)(2).) He argues that his intention was merely to participate in a "blanket party" which would not ordinarily involve serious injury to the victim. He also argues that he is not accountable for Devin's acts because he withdrew when he observed that Devin was strangling the victim.

There appears to be credible evidence, however, that would support the jury verdict either on the basis of the defendant's direct participation or on accountability principles. While accountability may not exist even though a defendant has the proper mental state if before the commission of the offense he terminates his effort to promote or facilitate such commission and wholly deprives his former efforts of effectiveness, gives timely warning to law enforcement authorities, or otherwise makes an effort to prevent the commission of the crime (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)(3)), we conclude that the defendant has not made the defense of terminating his participation in the crime.

There was testimony that defendant had helped Devin braid the sheet into a rope earlier in the day, had heard Devin conclude that it was "strong enough." He stated to investigator Rotunno that he heard Devin say that the victim would be "lynched." He heard someone say prior to waking up the victim that "a blanket party would be better," from which the jury could infer that something other than a "blanket party" was involved. He heard Devin say, "Narcs don't make it," when the rope was being placed around the victim's neck. The defendant continued to hold the victim down after he said he asked Devin to stop, and after he heard Devin refuse, saying they could be charged with attempt murder. It was not until the victim was unconscious and defendant remarked to the effect that he was dead that defendant released his hold of the victim; that

he participated in the "hanging" at a time when, the medical testimony indicated, the victim probably was not dead.

■■ The gist of defendant's argument is that the facts that witnesses were inconsistent in their testimony and defendant was to be released in two days militate against finding of intent. In such circumstances, however, it is the prerogative of the jury to ascertain the truth, and reviewing courts will uphold the verdict on issues of weight and credibility unless the evidence is so improbable as to raise a reasonable doubt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Yarbrough* (1977), 67 Ill. 2d 222, 227.) *People v. Hister* (1975), 60 Ill. 2d 567, cited by defendant is an example of improbable evidence which appears distinguishable on its facts. Here the evidence was not improbable.

The accountability of the defendant was supported by the circumstances. (See *People v. Mertens* (1979), 77 Ill. App. 3d 791, 796; *People v. Grice* (1980), 87 Ill. App. 3d 718, 726.) It would appear that defendant did not effectively disassociate himself from the criminal acts after he must have known what was happening. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)(3).) *People v. Ramirez* (1968), 93 Ill. App. 2d 404, relied upon by defendant, involves "guilt by association," without affirmative participation, and appears inapposite.

## II

The trial court suppressed a statement made by defendant on June 5, 1979, in the absence of counsel who had been appointed. Another statement was made on June 7, 1979, in the jail, and which the court refused to suppress. The defendant argues that the latter statement resulted from the "tainted" statement and should also have been suppressed.

The defendant initiated the second inquiry by voluntarily seeking out the investigators to assure that the fact that he thought there was only going to be a "blanket party" was included in his statement. (Also, he sought a transfer to the Kane County jail.) A hearing was held both as to the second statement and defendant's subsequent testimony on June 14, before the grand jury. The defendant argues that the investigators' saying, "Tell us again what you told us on June 5," and not writing the statement or keeping notes, are circumstances showing that it was a mere reaffirmation of the tainted statement.

The State first contends that the totality of the circumstances shows that the first statement was voluntary (*People v. Lopez* (1981), 93 Ill. App. 3d 152, 156), and that the attorney's absence is not fatal. (*People v. Krueger* (1980), 82 Ill. 2d 305, 312.) However, the trial judge concluded otherwise based on the totality of the circumstances. He found that the

investigators knew that defendant was represented by an attorney and that the attorney had just left the building, but immediately started to interrogate defendant. And moreover, the investigators undertook to give legal advice to defendant as to what could happen to him and what he should do, thus interfering with his right to counsel. His conclusion that defendant had not knowingly and intelligently waived his rights is supported by the record. There is, however, no *per se* rule that a defendant may not thereafter waive his right to have counsel present and thus validate his statement. *People v. Church* (1981), 102 Ill. App. 3d 155, 161.

As to the June 7 statement, there is no question raised that rights against self-incrimination, *Miranda* rights, were not honored. Defendant first sought to exclude the investigators' testimony at trial as in violation of discovery rules, but this was denied. He then argued that the June 7 statement cannot be distinguished from the statement of June 5, found to be illegal.

■■ *Miranda* warnings by themselves do not attenuate an illegal act of the police. (*Brown v. Illinois* (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) The question whether a confession is a product of free will under *Wong Sun v. United States* (1963), 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416, must be answered under the facts of each case, considering such factors as *Miranda* warnings, the "temporal proximity" of the illegal act and the confession, "the presence of intervening circumstances," and "particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.

Here, *Miranda* was carefully followed, the defendant initiated the subsequent questioning, no promises or threats were made, there was an interval of time during which the defendant consulted with counsel, and there is no evidence that the officers had a wrongful purpose. These factors would appear to support the trial court's ruling. *People v. Pierce* (1980), 88 Ill. App. 3d 1095, 1101-03; *People v. Finch* (1980), 86 Ill. App. 3d 493, 497.

Defendant's testimony before the grand jury on June 14 was to the same effect as his June 7 statement. Defendant argues that although counsel was present and advised him, he was forced to so testify because of the prior illegality.

The exclusionary rule has been held not to apply to grand jury proceedings. (*United States v. Calandra* (1974), 414 U.S. 338, 347, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 619.) However, defendant's argument attacks the use of the evidence at trial based on his fruits of an illegal act theory. It would appear that the same reasoning applied to his June 7 statement would obtain herewith, there being an even greater time interval. The findings of a trial judge as to voluntariness will be upheld where they are

not against the manifest weight of the evidence. (*People v. Brownell* (1980), 79 Ill. 2d 508, 521.) Here, we conclude that the findings were not against the manifest weight of the evidence and we thus uphold them.

### III

■■ The following are urged by the defendant as prejudicial trial errors.

A. Defendant argues that the exclusion for cause of prospective jurors because they could never vote to impose the death penalty denied him a fair trial.

No studies were cited. (See *Witherspoon v. Illinois* (1968), 391 U.S. 510, 517-18, 20 L. Ed. 2d 776, 782, 88 S. Ct. 1770, 1774-75.) Further, there is no showing that peremptory challenges were exhausted and those who were predisposed to give the death penalty were also excluded. This court has held, in similar circumstances, that the selection process did not produce a jury biased in favor of the prosecution and prevent a fair trial by an impartial jury. *People v. Smith* (1980), 91 Ill. App. 3d 438, 448. See also *People v. Lewis* (1981), 88 Ill. 2d 129, 147.

■■ Defendant further argues that a new jury should have been impanelled for the sentencing phase. This appears to have been waived by defendant when he elected to be sentenced by the court when his motion for the impanelling of a new jury was denied. Additionally, no "good cause" for requesting a different jury appears to have been demonstrated. *People v. Lewis* (1981), 88 Ill. 2d 129, 146-47.

B. Defendant argues that repeated references by State's witnesses were made to the suppressed statement of June 5 and that this denied defendant a fair trial.

The issue arises largely from defense counsel's cross-examination of investigators Rotunno and Crest as to their inability to clearly recollect defendant's June 7 oral statement, and their failure to tape the statement or keep notes of the conversation, patently seeking to create the inference that the June 7 statement was fabricated and that the State was essentially trying to get in a prior statement which had been suppressed. In answer to a question on cross-examination Rotunno stated that the reason why the June statement was not recorded was "that information is contained in another five-page document." On defense counsel's motion the reference was stricken and the jury instructed to disregard it. On redirect the State questioned Rotunno as to his having refreshed his recollection from the earlier document. On objection the judge indicated the question to be improper and instructed the jury to disregard it, also denying defendant's request for a mistrial.

■■ Questioning can be directed on redirect examination towards refuting attempted impeachment of a witness. (*People v. Lewis* (1977), 52 Ill. App. 3d 477, 486; *People v. Marino* (1980), 80 Ill. App. 3d 657, 666.) It should be

noted that no substantive evidence of the earlier confession was admitted. (See *People v. Morris* (1978), 65 Ill. App. 3d 155, 160.) Thus as it appears from the record that the defendant's statement made on June 5, 1979, was, with the addition of factors which the defendant sought to incorporate, virtually identical to the statement made by the defendant to the investigators on June 5, both statements being the defendant's account of the incidents of May 20 and 21, 1979. The State had the right to counter the misleading impression from defense counsel's questioning, that because they did not record the substance of the June 7 statement, the defendant did not make the June 7 statement. Except for the suggestion created by the cross-examination the jury would not have been made aware of the fact that there had been an earlier statement. Moreover, the rule that an instruction to the jury to disregard errors usually corrects errors, applies particularly to this record. *People v. Carlson* (1980), 79 Ill. 2d 564, 577.

C. Defendant argues that the trial court erred in ruling that the testimony of a Sergeant Quinn that Hopson made certain statements to him which the defense considered favorable was inadmissible hearsay. We conclude that the testimony appears clearly to either be hearsay or, if not addressed to defendant's culpability, irrelevant. The defendant couples this ruling with the court's ruling that if Hopson, whom the State did not call as a witness, were called as a defense witness the State could attempt to impeach him by a prior conviction. Thus, defendant argues, defendant was required to choose between either foregoing the accomplice's testimony or subjecting him to the State's inquiries into his guilty plea. Since it appears that the accomplice was available to testify as a witness we see neither error nor prejudice to the defendant but mere pursuit of a tactical decision. Moreover, the accomplice was called as a court's witness, and defendant was not prevented from cross-examination. *Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 35 L. Ed. 2d 297, 308-09, 93 S. Ct. 1038, 1045-46, relied upon by defendant, is distinguishable. In *Chambers*, the defendant was prevented by a State "voucher" rule from cross-examining a witness who had previously confessed to the same crime and later recanted; or from calling other witnesses to the witness' confession, thus resulting in the total exclusion of critical evidence.

■■ The defendant also couples this argument with his claim that the court erred in denying a defense motion *in limine* to prohibit the State from impeaching the accomplice as to his plea and agreed sentence at a time when no final judgment had been entered. It was not error to allow the State to inquire as to the accomplice's guilty plea despite the fact judgment had not been entered. The plea of guilty, or conviction of an ac-

complice of the same offense is admissible to impeach a co-defendant, although not generally admissible as evidence of another's guilt. *People v. Sullivan* (1978), 72 Ill. 2d 36, 42.

D. Defendant has also claimed error in the fact that the accomplice was called as a court's witness which prevented the defendant from restricting the scope of his testimony. However, defendant agreed to this procedure when his *in limine* motion to prevent the State's cross-examination as to the prior conviction was denied.

E. Defendant argues that it was improper for the State's medical witness, Dr. Henley, to be permitted to testify that the victim did not die in bed but was alive at the time he was hung up. The argument seems to be based on the contention that the State had sought to show in a separate trial of a codefendant that death occurred on the bed. There is no evidence in the record to support this argument or suggest any inconsistency in the testimony of Dr. Henley.

F. The same kind of argument has been made as to the cross-examination of the accomplice. Again, there is nothing in the record to show that the cross-examination would be inconsistent with the accomplice's testimony at the codefendant's trial.

G. Defendant also argues that he was erroneously denied the right to call Dr. Jack Arbit, a psychologist who had examined the codefendant Devin as to sanity and who would testify that the latter had a violent and compulsive personality. The direction of defendant's argument is that this would have corroborated defendant's theory that he intended no great harm and that Devin's act was impulsive and not contemplated by the defendant.

■■ The State objected to the calling of Dr. Arbit as a witness for the reason that the defendant did not inform the People of his intention to call the witness pursuant to Supreme Court Rule 413 (Ill. Rev. Stat. 1979, ch. 110A, par. 413); and, in addition, that the offer would have introduced an irrelevant collateral inquiry into the case. We agree. The defendant's defense was that he had no intention to kill the victim and ceased participation in the attack when it became clear to him that the codefendant was strangling the victim. This defense he placed before the jury by other testimony. The introduction of a psychologist's opinion that the codefendant possessed a violent personality would have added nothing to the defense and would have involved the court and the jury in a collateral inquiry which was not relevant to the question of the defendant's intention.

H. Defendant also argues that various statements by the prosecutor in closing argument prevented a fair trial. Principally the defendant complains of the prosecutor's closing argument in which he referred to the

fact that defense counsel had pointed out that the State had a responsibility not only to prosecute the case but also to the People of the State of Illinois. The prosecutor argued that he was fulfilling that responsibility by asking the jury to return a verdict of guilty of murder and continued:

"* * * [W]e fulfilled that responsibility in the case of *People v. Devin* and we think we fulfilled it correctly in that case; he was found guilty, given the death penalty. We say that we are fulfilling that same responsibility * * *."

■█ ■ It was error for the prosecution to refer to the fact that the co-defendant was given the death penalty. However, the record appears to support the State's argument that the comment, with the exception we have noted, was invited by numerous references in defense counsel's closing argument to the effect that the State was not acting responsibly to furnish reliable evidence particularly with regard to the investigators, Crest and Rotunno; and that the prosecution was introducing inconsistent testimony in the trial of the codefendant as against this trial. The portion of the State's argument that it was in fact acting responsibly was an invited response and was not error. (*People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 490.) The reference to the death penalty in the codefendant's case, although error, does not constitute reversible error. The prosecutor did not rely on the codefendant's conviction in his argument to the jury and on the whole record the comment could not have changed the result which the jury reached. (See *People v. Palmer* (1970), 47 Ill. 2d 289, 300.) Moreover, the trial court promptly sustained defendant's objection and instructed the jury to disregard the comment. Under the whole record we conclude that the act of promptly sustaining the objection and instructing the jury to disregard the argument was sufficient to cure any prejudice. See *People v. Baptist* (1979), 76 Ill. 2d 19, 30; see also *People v. Carlson* (1980), 79 Ill. 2d 564, 577.

## IV

We next consider defendant's argument that the statute setting forth aggravating factors upon which a death penalty may be sought is unconstitutionally vague. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b)(2).) Defendant argues that the reference to a killing of an inmate of a "facility of the Department of Corrections, or any similar correctional agency" does not apply to the Du Page County jail.

■■ The defendant did not receive the death penalty and appears to have no standing to raise the issue. (See, *e.g., People v. Siefke* (1981), 97 Ill. App. 3d 14, 15.) There also appears to be a stipulation that the statute was applicable, so that defendant may be considered to have waived the argument in any event.

## V

Finally, defendant contends that the factors between himself and the separately tried defendant, who pled guilty to accountability for the murder and was given a 20-year sentence, indicate an abuse of discretion in disparately sentencing this defendant to 40 years' imprisonment. The defendant, however, has not produced a record to support his burden of showing disparity. The court's statement of the matters it considered in sentencing the defendant shows that defendant's background and potential for rehabilitation was carefully considered, and the length of the sentence was clearly not an abuse of discretion by the court. (See, *e.g.*, *People v. Cox* (1980), 82 Ill. 2d 268.) Defendant has failed to demonstrate that he and the other accomplice were similarly situated with respect to background, prior criminal history, potential for rehabilitation, or involvement in the particular offense which would justify a consideration of disparity. We therefore uphold the sentence.

The judgment of the trial court is affirmed.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.