THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY BUIE, Defendant-Appellant.

Fifth District   No. 5—90—0501

Opinion filed August 28, 1991.

Larry L. LeFevre and Paul K. Zeman, both of LeFevre, Zeman, Oldfield & Schwarm Law Group, of Vandalia, for appellant.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

Two boys, one 20, the other 16, were walking on the storefront sidewalk in St. Elmo, Illinois, one late October night.

A truck whipped across the sidewalk and stopped in front of them. One of the boys ducked into a doorway; the other ran, but was caught by defendant's two fellow scofflaws. They put him in a headlock and dragged him back to where defendant was holding the other boy, who had ducked into the doorway.

They slapped the boys and slammed their heads against a wall. A knife was pulled and held to one boy's throat. "Don't tell anyone," they said.

Defendant grabbed one of the boys, pulled him out to the sidewalk, shoved him to the ground, and with one of his fellow thugs, kicked him in the ribs, again and again.

One of the hoodlums said something about getting a gun out of the truck. One of the two boys managed to get up, run to an apartment above a store, pound on the door, and scream for help.

Defendant and his two fellow outlaws ran to the truck, jumped in, and drove away.

The two boys started home, thinking they were safe, but they were wrong. They were stopped again.

The 20-year-old ran away. Defendant and one of the others talked to the 16-year-old. One of them grabbed him in a headlock and said he was going to do some kind of "suplex wrestling move or something like that." He told the boy that if he did not land right, he probably would break his neck. He asked, "How much do you want to bet he is going to bleed?"

The boy tripped and fell down, his legs extending upward into the air, and one of the men got on top of him.

Defendant grabbed the boy's leg and said, "We are going to treat you like a little lady."

They started shoving the boy's head into the concrete sidewalk and grabbing his face. The boy kicked one of them in the mouth, escaped their grasp, and ran to the home of the other boy's mother, where he saw the 20-year-old boy bleeding and bruised.

The mother left to get a policeman who lived in the neighborhood, but when she got outside, she saw defendant and his two henchmen walking up the street. She stopped, turned, and went back inside, and the three muggers came to her house.

"Hey, little woman, we got something for you," they yelled.

They came up to the house, pounded on the door, and yelled to the two boys to come outside so they "could beat their asses again."

Defendant pried open one of the windows and yelled to the woman. "Bitch," they called her. "Come outside so we can fuck you up the ass, too."

Defendant complains about four things on appeal: (1) that elevating a battery committed on a public way to an aggravated battery (see Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8)) violates the equal protection clauses of the Illinois and United States Constitutions; (2) that failure to exclude the mother's testimony was error; (3) that permitting the mother to testify about defendant's conduct at her house was error; and (4) that sentencing defendant to five years in prison was excessive and disparate to that received by the codefendants.

We affirm defendant's conviction of aggravated battery and his five-year sentence to prison.

Section 12—4(b)(8) of the Criminal Code of 1961 states:

> "(b) A person who, in committing a battery, commits aggravated battery if [*sic*] he either:
>
> * * *
>
> (8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement." Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8).

Defendant claims the statute violates the equal protection clauses of both the Illinois (Ill. Const. 1970, art I. §2) and United States (U.S. Const., amend. XIV) Constitutions, arguing that there is no rational basis for elevating simple battery, a misdemeanor, to aggravated battery, a felony, just because it was done on a public way. (See *People v. Lockwood* (1976), 37 Ill. App. 3d 502, 346 N.E.2d 404 (Moran J., dissenting).) We disagree.

Equal protection challenges to this statute have been dealt with and rejected by Illinois courts. (See *People v. Watson* (1987), 118 Ill. 2d 62, 514 N.E.2d 167; *People v. Lowe* (1990), 202 Ill. App. 3d 648, 560 N.E.2d 438; *People v. Cole* (1977), 47 Ill. App. 3d 775, 362 N.E.2d 432.) In each of these cases, the supreme court and appellate court noted that "[t]o meet constitutional scrutiny, classification under the statute must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons in similar circumstances shall be treated alike." (*Lowe*, 202 Ill. App. 3d at 656, 560 N.E.2d at 443, citing *Watson*, 118 Ill. 2d 62, 514 N.E.2d 167.) "[G]overnments may recognize and act upon factual differences which exist between individuals, classes and events [citations], and *** the police power may be broadly exercised by the legislature to preserve public health, morals, welfare and safety." *Cole*, 47 Ill. App. 3d at 779-80, 362 N.E.2d at 435.

■ Here, the legislative intent of the statute is clear: it intended to protect the public safety by making more serious a battery done in a public place, because it "constitutes a more serious threat to the community than simple battery." (Ill. Ann. Stat., ch. 38, par. 12—4, Committee Comments, at 465 (Smith-Hurd 1979).) Thus, elevating simple battery to aggravated battery relates directly to the harm sought to be remedied and therefore withstands defendant's equal protection challenge.

■ Next, we address defendant's contention that the circuit court should not have allowed the mother to testify. The State originally charged defendants with criminal trespass to her house but dropped the charges. Prior to trial, counsel for one of the codefendants sought *in limine* to bar her from testifying, claiming she should not testify since the criminal trespass charges had been dropped and since she was not an occurrence witness. The State argued that she could testify to the statements made outside her house by defendants and to the boys' condition after they retreated to her house.

The circuit court allowed her to testify but granted codefendant's motion to the extent that it barred her from testifying as to the dis-

missed criminal trespass charges. Defendant claims the circuit court's denial of the motion was error. Defendant, however, neither joined in the motion *in limine* brought by the codefendant nor objected during her testimony; therefore, defendant has waived review of the issue on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Defendant also argues that the mother's testimony that defendant pounded on the door of her house and pried open a window violated the limited order *in limine*. This issue, too, is waived. To preserve an issue for appellate review in Illinois, the party must object at trial *and* file a written post-trial motion raising the issue. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) Here, defendant failed to object at trial; therefore, the issue is waived.

Lastly, defendant contends that his sentence was excessive and disparate to that received by codefendants. Defendant argues that when the relationship between the offense charged and the sentence imposed is so disproportionate as to bring the system of the administration of justice into question, it should be corrected on appeal. (See *People v. Odom* (1980), 82 Ill. App. 3d 853, 403 N.E.2d 297.) Defendant claims, or in his words, the "bottom line is," that a sentence of five years in prison for fighting warrants reduction. We disagree.

■ It is not the function of the appellate court to substitute its judgment for that of the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Rather, it is this court's function to determine if the trial court abused its discretion in imposing the sentence. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The circuit court should consider the following factors when sentencing: (1) the evidence at trial; (2) presentence reports; (3) evidence of aggravation or mitigation; (4) arguments on sentencing alternatives; and (5) statements made by defendant on his own behalf. (*People v. Clark* (1981), 97 Ill. App. 3d 953, 424 N.E.2d 9.) There is no evidence that the circuit court abused its discretion or considered improper information in deciding on defendant's sentence.

Defendant also claims that his sentence was disparate to that of the codefendants—one received probation, while the other received two years in prison. We find no merit in his claim. To prove disparate sentencing, defendant must show that those receiving lesser sentences were similarly situated in backgrounds, prior criminal history, potential for rehabilitation, or in involvement in the particular offense. (*People v. Gangestad* (1982), 105 Ill. App. 3d 774, 434 N.E.2d 841.) We compare defendant with his codefendants: one codefendant had no convictions; the other had 10 traffic violations and three alcohol-related violations. Defendant, on the other hand, had these convic-

tions: disorderly conduct in October 1981; theft in December 1981; theft in October 1983; theft in May 1985; possession of cannabis in March 1988; and nine traffic offenses including an offense for driving under the influence (DUI) in which he failed to complete treatment and pay his fine. *Res ipsa loquitur*.

The circuit court is affirmed.

Affirmed.

HARRISON and GOLDENHERSH, JJ., concur.