THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ISAIAH SPANN, Defendant-Appellant.

First District (1st Division)    No. 79-59

Opinion filed June 15, 1981.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Dean C. Morask, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Isaiah Spann (defendant) was found guilty of murder and eight counts of armed robbery. He was sentenced to concurrent terms of 20 to 40 years and 10 to 15 years respectively. He appeals.

The matter is presented to us by briefs submitted by defendant's counsel, the People and by a supplemental brief, pro se. Defendant's brief raises three issues and the pro se brief presents six more issues. It is manifestly impossible to present a detailed statement of the testimony of each witness seriatim and keep this opinion within reasonable length. A summary of the evidence follows.

The People called 12 witnesses in chief. The defense called 11 witnesses. The People also called two witnesses in rebuttal.

The evidence shows Alvin Richter and Harold Suffrin operated a wholesale grocery business on West Randolph Street, in Chicago. They had a number of employees, including Woodoff Littleton. On September 4, 1976, during the afternoon, the owners, Richter and Suffrin, were working in the store. Littleton was present at work. Two men entered the store. One of these persons was approximately 5 feet 6 inches, and the other was taller, about 6 feet. The shorter person was Milton Golden. Golden was a friend of Littleton and of Scotty Smith, who also had worked at the store.

Golden asked Richter for some eggs. At Richter's request Littleton took the two men to see the eggs. The two supposed customers drew guns and proceeded to search and rob Suffrin and other persons present. The robbers compelled them to lie on the floor. All of them were then herded into the cooler. The robbers also compelled Richter to open the safe and remove the money. Two other customers entered the store. They also were robbed and forced into the cooler.

James Wilson entered the store as a customer. He had driven there with Louise Carter, his friend of many years. The car was parked from 15 to 20 feet from the store. Carter stepped out of the car. She heard a shot and saw two men walk out of the market. She saw them at a distance of 10 feet. The taller man had a box under his arm. Carter identified him as the defendant.

Carter entered the market. Somebody said, "They shot him." She saw Wilson in bloody condition. He died in the hospital. There is testimony some of the persons in the cooler heard two shots. Also, the shots were 5 seconds apart, and the witnesses heard men running away.

Each of the contentions in defendant's brief and the pro se brief will be considered in order. Additional facts will be stated as required.

## I

Defendant's brief concedes it is undisputed the shorter robber was Milton Golden. The issue raised is the identification of defendant as the taller person. The People called nine persons who were present. No identification was made by six of these witnesses.

Auguster Johnson entered the store and was pushed into the cooler. He heard someone say twice, "Shoot him." He heard two shots. He did not see either of the malefactors.

Charles McGhee entered the store. He was held up by the shorter robber and never saw the taller man. From the cooler, he heard shots and scuffling.

Alvin Richter, a store owner, testified he told Littleton to show the

two men where the eggs were. He was compelled to assume a position on the floor. He was relieved of his money and pushed into the cooler. He went to a police lineup 12 days after the occurrence. He told the police he did not believe he could identify any person but he would "take a guess at it." He picked out men in the second and sixth positions of the lineup. He did not identify the defendant, who was in the fifth position. He testified he knew a man named Timothy Barnes, a brother of Scotty Smith, who in turn had briefly worked at the store and was a friend of Woodoff Littleton.

Harold Suffrin, another store owner, was ordered to the floor, and his money was taken. He was also pushed into the cooler where he heard two shots. He did not identify the defendant.

L. G. Mines entered the store as a customer. He removed his glasses so that his vision was "not very good." He gave money to one of the robbers. He testified this robber was slightly taller than himself. His own height was 6 feet. He surrendered his money and was pushed into the cooler. He heard scuffling and heard a shout, twice, "Shoot him." He attended a lineup during September 1976. He could not identify defendant as the taller robber.

John Thomas entered the store and was held up by a short robber some 5 feet 3 or 4 inches tall. This man quickly took off Thomas' glasses. Thomas was forced to the floor and pushed into the cooler. He testified he could not recognize either of the robbers.

Mark Roach, an investigator for the public defender, testified for defendant that he had a conversation with John Thomas on September 26, 1978. Thomas told him the No. 5 man in the lineup photograph was not tall enough or thin enough to be one of the robbers. Thomas also said the No. 6 man was closer in height and "skinnyness" to the man who actually robbed him.

The defense also called Howard Lisit, a law clerk employed by the public defender. He testified that on August 30, 1977, he heard Thomas say the No. 5 man in the lineup could not have been one of the robbers. He was not as tall or as heavy as the man who robbed him. Thomas said nothing in this conversation concerning his vision. Thomas also said the taller robber was 6 feet and did not use the word, "tall." However, the witness did not recall whether or not Thomas was wearing glasses at the conversation.

Three witnesses called by the People identified defendant as the taller of the robbers. In each instance defendant attempts to attack the veracity of these witnesses.

Louise Carter made a positive in-court identification of defendant. She was standing on the sidewalk when she saw the offenders walk out of the market and pass by her at a distance of 10 feet. This was during broad

daylight. She testified she attended a lineup on September 16, 1976. She immediately recognized defendant as the taller person who had left the market. This witness did not inform the police of her recognition of the defendant. Two days after the shooting she had visited the victim at the hospital. He had asked her not to identify the defendant. She did not tell anyone about her recognition of defendant until she spoke to an assistant State's Attorney. She told him she had recognized defendant at the lineup. The assistant State's Attorney showed her a photograph of the defendant which she identified. She identified the photograph in court and testified it showed defendant as having what could be called a beard. In court she described defendant as being 6 feet tall, approximately 170 pounds, without a beard but in need of a shave. She also testified she was afraid to identify defendant. The defendant called an investigator of the Chicago Police Department. He interviewed Louise Carter at the scene of the crime. She testified she was waiting in an automobile when she heard shots. She was upset and nervous when he questioned her.

Woodoff Littleton, a clerk at the store, knew Milton Golden. Littleton's employer, Alvin Richter, directed Littleton to show Golden the eggs. Golden pointed a pistol at him. Shortly thereafter the second robber ordered that all persons be put in the cooler. Littleton identified this person as the defendant. He saw defendant was armed with a silver gun with a white handle. He heard the shouts, "Shoot, man" twice and heard shots. He also testified Scotty Smith, Milton Golden and three others came to call on him during the day after the robbery. Golden asked Littleton if he would identify anyone. Littleton said he wanted nothing to do with it. Littleton identified defendant from a lineup. In court he identified a picture of the lineup and identified defendant as being in the fifth position. A week later, Golden came to Littleton's home, but Littleton denied him entrance. A question of Timothy Barnes came up again here. Littleton described Barnes as about 6 feet tall, 160 pounds. He described defendant as 6 feet 1 inch and weighing 160 pounds. Littleton further testified Scotty Smith told him he could get $200 from the defendant and Golden if he did not testify and identify them.

William Heatherly, an investigator for the public defender, testified he spoke to Littleton on September 11, 1978. Littleton told him he had seen defendant in the neighborhood before September 4, 1976. Warren Thompson, also an investigator for the public defender, corroborated this testimony. He had measured the defendant with shoes on and defendant's height was 5 feet 10 inches.

Warren Harris was called by the defendant. He had previously been convicted of aggravated battery in 1973 and murder in 1977. He was in the county jail at the time of his testimony. He testified that on September 7, 1976, he was present at the home of Woodoff Littleton and heard

Littleton say he would not identify Timothy Barnes as one of the robbers but would instead identify the defendant.

The defendant called the manager of the building where Littleton lived. The manager testified that on September 4, 1976, Littleton paid $50 toward his rent. Prior to that time his rent was in arrears. Littleton told the manager Scotty Smith had been involved in a robbery of the store. This witness had no record or receipt concerning the alleged payment by Littleton.

Willie Collins testified he entered the store. A small man, armed, ordered him to put his money and wallet in a box. He did. As Collins was being pushed into the cooler, he saw another armed man. He described this person as between 5 feet 9 inches and 6 feet. He saw the back and side of this person and recognized him as a patron of his hot-dog stand. He made an in-court identification of defendant as being this taller person. Collins heard the shots and then left the cooler and followed the offenders. He asked a bystander if he saw some "guys" running. When the man replied affirmatively, Collins asked him to call the police because of the incident at the store and the shooting.

On the day after the incident, Collins identified pictures of defendant and Golden from a group of photos shown him by the police. At a lineup on September 16, Collins recognized defendant as being No. 5 man in the group. He did not reply when the police asked him if he could identify one of the men in the lineup. On cross-examination, defense counsel asked him if he had selected the No. 6 man in the lineup. Collins responded the sixth man was not one of the robbers. He also stated on cross-examination that at the preliminary hearing he testified he was not positive about his identification of the taller person. On redirect examination Collins stated he had so testified at the preliminary hearing because of fear after having received at least five telephone calls at his home.

The attorney for Milton Golden testified that on July 31, 1978, he was present at an interview of Willie Collins. Collins then stated he did not get a good look at the taller robber. Collins looked at a lineup photograph and identified the No. 6 man as the taller robber. Collins also said he knew after the lineup that he had picked the wrong man. On cross-examination, the attorney agreed Collins had stated he recognized one of those in the lineup photograph as the person he had seen in court on July 31, 1978.

The People called Carrie McGhee in rebuttal. She knew Milton Golden and Warren Harris. She had seen them speaking to each other. She also knew the defendant and knew his nickname was "Sun." She saw Milton Golden and the defendant together during the summer of 1976 about two or three times each week.

Counsel for defendant urge that the identification of defendant is not sufficient. They stress each of the points above mentioned with reference

to the testimony of each of the witnesses concerning alleged discrepancies in descriptions of the defendant.

We find a complete refutation of each and all of these arguments in three decided cases. The gist of these cases is the established principle that identification is a factual issue for determination by the trier of fact, and these various alleged discrepancies, such as those above described, present simply questions of credibility for determination by the trier of fact. For example, in *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226-27, 367 N.E.2d 666, there is a complete exposition of the time-honored principles that the testimony of one witness is sufficient to convict where the witness is credible and had a proper and sufficient view of the accused. Also, "[c]onflicts in testimony are certainly not uncommon"; resolution of these issues is within the province of the jury; and, finally, the verdict of the jury will not be set aside unless it is so improbable as to raise a reasonable doubt of guilt. 67 Ill. 2d 222, 227.

The same principles are succinctly set forth in *People v. Manion* (1977), 67 Ill. 2d 564, 571-72, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513. To the same effect we find *People v. Jones* (1975), 60 Ill. 2d 300, 307-08, 325 N.E.2d 601.

■■ Certain of the arguments advanced by defendant in this regard fall into another category. Defendant raises an issue as to whether or not he was wearing a beard, and he attempts a comparison between his beard as it appeared 5 days after the robbery with testimony of various witnesses on this subject. It has been frequently held that precise accuracy in description is not necessary. Even where a defendant has a clear and visible facial characteristic, the identification remains valid and the alleged discrepancy goes solely to the weight of the evidence and is a matter of credibility only. (*People v. Pickens* (1978), 63 Ill. App. 3d 857, 863, 380 N.E.2d 868, and cases there cited.) Applicable to the identification of defendant by Willie Collins, his testimony is "strengthened to the extent of his prior acquaintance" with defendant as a result of having seen defendant at his (the witness') hot-dog stand. See *People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 713, 329 N.E.2d 262, *appeal denied* (1975), 60 Ill. 2d 599.

■■ In the instant case a complete refutation of defendant's arguments in this behalf appears from the basic fact that we have here positive identification of defendant by three witnesses. Defendant attempts to overcome this evidence by casting doubt upon this testimony. Each and all of these attempts and contentions were carefully brought out in the evidence and presented to the jury in final argument by the able counsel who represented defendant at trial. Thus, these factors were all presented to and considered by the trier of fact. We cannot say the evidence upon

which the verdict of the jury was reached was so improbable as to raise a reasonable doubt of guilt.

## II

Defendant next contends the trial court refused counsel the right to call a person named Timothy Barnes into the courtroom during testimony of Auguster Johnson and thereafter during the testimony of L. G. Mines. It is the theory of the defense that these witnesses should be asked to identify Barnes or, alternatively, that Barnes be called so that the jury would have an opportunity to compare the height of Barnes and the defendant. This contention fails for a number of reasons.

The motion of defendant for new trial filed November 22, 1978, does not specify or even mention this matter. Consequently, the point is waived and may not be advanced in this court. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.) In addition, as will be shown, this contention cannot possibly be classified as plain error. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

This argument is based upon the assumption that Timothy Barnes was in the lineup from which defendant was identified. However, counsel for the People and for defendant agree, and so stated during oral argument, that Timothy Barnes was not in the lineup. Furthermore, L. G. Mines and Auguster Johnson never identified the defendant. Thus, it was useless and unnecessary for defendant to go through this proposed procedure.

Also, it would have been totally unnecessary for defendant to prove the height of Barnes or to compare his height with that of any other person. As above shown, defendant introduced testimony without objection that measurement showed defendant's height with shoes on was 5 feet 10 inches.

■■ Finally, the issue of demonstrative evidence of this kind is a matter of discretion with the trial court. The exercise of that discretion " 'will not be interfered with unless there has been an abuse resulting in prejudice to the defendant.' " (*People v. Calloway* (1979), 79 Ill. App. 3d 668, 673, 398 N.E.2d 917, *appeal denied* (1980), 81 Ill. 2d 584, quoting from *People v. Skidmore* (1966), 69 Ill. App. 2d 483, 488, 217 N.E.2d 431, and other authorities there cited.) It is apparent there was no abuse of discretion by the trial judge in this regard.

## III

Defendant urges error because of improper argument by the prosecutor. These contentions are presented in three categories. Applicable

fully to each of these objections it must be remembered that control of the scope and type of argument "to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge has performed his duty and properly exercised the discretion vested in him" (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324). In addition, a prosecutor is allowed great latitude in his closing argument. (*People v. Oliger* (1975), 32 Ill. App. 3d 889, 893, 336 N.E.2d 769.) In the case before us, the trial court instructed the jury that closing arguments are not evidence and any statement made in argument not based on the evidence should be disregarded. (Illinois Pattern Jury Instructions, Criminal, No. 1.01 and 1.03 (1968).) This type of instruction tends to cure possible prejudice from improper remarks. *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 121-22, 390 N.E.2d 1339.

### A

■■ The prosecutor said defense attorneys had "a professional duty to defend that individual to the best of their abilities." Also, the prosecutor said defense counsel had "misstated" some very important areas of testimony. Then, in a rather fanciful argument, the prosecutor compared a mountain to the truth and the clouds over the mountain as being lies or deceptions to divert from the truth. However, when the prosecutor repeated that defense counsel were "clever, competent attorneys," the trial court sustained a defense objection and also cautioned the jury that when objections to argument were thus sustained the comments and any inference therefrom should be disregarded. In this situation the ruling and instruction of the trial court cured any possible error resulting from this statement. The same observation applies to other instances of alleged improper argument. See *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200, and other authorities there cited.

As regards the argument comparing mountain and clouds to the statements of the defense counsel, we find no objection was made. In our opinion, lack of objection waives any possible error resulting from this argument. The same applies to other arguments in remaining categories as hereinafter described. (See *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) For example, the same principle evidences a waiver in accordance with the remark of the prosecutor regarding alleged misstatement of the testimony and also an instance cited by the defendant when an alleged comparison was made between one of the defense attorneys and a door-to-door salesman.

### B

■■ The prosecutor argued that the acts of defendant were those of a professional robber and that defendant was clever enough to let Milton

Golden, his accomplice, do all the dirty work. In *People v. Cox* (1979), 71 Ill. App. 3d 850, 857-58, 389 N.E.2d 1238, this court dealt with quite a similar argument. As there pointed out, the argument does not suggest that the defendant was engaged in criminal activity outside the subject of the trial. The remark was directed to the nature of the crime involved in the trial. In addition, as shown, the careful trial judge sustained an objection to this remark.

In this category, no objection was made by defendant to a remark that Warren Harris had previously been convicted of other crimes and to the remark by the prosecutor that the defendant should not be rewarded for his "clever acts."

## C

This category is concerned with remarks regarding credibility of witnesses. The State's Attorney referred to the State's witnesses as "simple, ordinary, hard-working individuals" who told the truth. Also, the State's Attorney told the jury the three identifying witnesses for the People did not lie and had no interest in lying.

It must be conceded that a prosecutor has the duty of discussing the credibility of the witnesses. As the State points out, it has been held that a prosecutor may "tell the jury the State's witnesses told the truth and are more credible than the evidence introduced by the defense." (*People v. Agosto* (1979), 70 Ill. App. 3d 851, 857, 388 N.E.2d 1018.) In addition, no objection was made to the argument which described the State's witnesses as hard-working persons, so this contention was therefore waived. Similarly, when the prosecutor told the jury the identification witnesses had no reason to lie, no objection was made by the defendant.

■■ Viewing the entire record here we cannot say that each of the assailed prosecutorial comments or all of them constituted " 'a material factor in the conviction' " (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363, quoting from *People v. Swets* (1962), 24 Ill. 2d 418, 423, 182 N.E.2d 150); or resulted in "substantial prejudice to the accused" (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881); or the verdict would have been different had the comments not been made (*People v. Singletary* (1979), 73 Ill. App. 3d 239, 253-54, 391 N.E.2d 440).

The pro se brief attempts to state a point on alleged improper argument by the State's Attorney. The first of these arguments pertains to a remark by the prosecutor in his opening statement. However, as the State points out, there is no evidence that this was done in bad faith. Also, no objection was ever made by the defendant to this statement. As a matter of law, it appears to us that there is no ground for reversal here because there is no showing that this statement resulted in substantial

prejudice to the defendant. See *People v. Sanders* (1980), 81 Ill. App. 3d 1001, 1004, 401 N.E.2d 1103.

The pro se brief complains the prosecutor made a remark to the court about the defendant writing down the address of a witness for the State. This remark was made outside the presence of the jury and thus obviously did not influence the jury. Other instances cited by the defendant pertain to two situations in which a defense objection was sustained. Thus, as above shown, the error, if any, was cured by the admonition of the trial court that the jury disregard the statement in question.

## IV

The pro se brief concedes that computation of time under the speedy trial statute (Ill. Rev. Stat. 1975, ch. 38, par. 103—5(a)) commenced to run on May 8, 1978. The State agrees and points out that defendant himself requested or agreed to numerous continuances until May 8, 1978. See *People v. Donalson* (1976), 64 Ill. 2d 536, 540, 356 N.E.2d 776.

Computing the time from May 8, 1978, to September 5, 1978, when trial was commenced, it appears the defendant was actually brought to trial within the statutory period. In addition, on August 28, 1978, the defendant filed a motion to quash his arrest. The People had answered ready for trial on the same day. Therefore, a new statutory period commenced to run on August 28, 1978. See *People v. Henderson* (1976), 39 Ill. App. 3d 164, 168, 351 N.E.2d 225, *appeal denied* (1976), 63 Ill. 2d 560, citing *People v. Green* (1975), 30 Ill. App. 3d 1000, 1007-08, 333 N.E.2d 478, *appeal denied* (1975), 61 Ill. 2d 599.

Defendant also urges violation of his sixth amendment right to speedy trial under the United States Constitution. Solution of this matter requires us to consider four factors which are the length of delay, reasons for the delay, assertion of the right by defendant and prejudice resulting to defendant from the delay. (*Barker v. Wingo* (1972), 407 U.S. 514, 530-33, 33 L. Ed. 2d 101, 116-18, 92 S. Ct. 2182, 2192-93.) As shown, the delay here was partly attributable to defendant and was within the designated statutory period. The delay was thus caused by defendant, at least in part. The record here is completely bare of any showing of prejudice in this regard.

In *People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876, defendants were extradited. The delay between their first court appearance in Illinois and their convictions was 25 months as to one defendant and 26 as to the other. (47 Ill. 2d 312, 317.) The supreme court ruled under all of the circumstances the delay was not "so inordinate as to create a presumption of prejudice as a matter of law." (47 Ill. 2d 312, 317.) The supreme court also ruled that the claim of prejudice was "conjectural." (47 Ill. 2d 312, 318.) No specific prejudice is stated in the pro se brief.

It should also be noted that the supreme court has "consistently held that a claim of prejudice cannot be founded on mere conjecture." (*People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857, and cases there cited.) In *People v. Hairston* (1970), 46 Ill. 2d 348, 355, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658, the supreme court pointed out:

> "The right to a speedy trial guaranteed to an accused by the constitution is protection only against delay that is arbitrary, unreasonable and oppressive, [citations] * * *."

■■ We find no circumstances in the instant case which would justify a claim of prejudice.

## V

The pro se brief urges in the heading to this point that the defendant was arrested without probable cause. However, the brief is virtually limited to argument that the arresting officers did not have a search warrant, a matter which is not material here.

The record shows that on the day following the robbery the police appeared before a judge and requested arrest warrants for defendant as well as for the codefendant Milton Golden. One of the identifying witnesses whose testimony is above set forth, Willie Collins, testified before the judge regarding the substance of the crime. It is undenied the warrant was then properly issued and defendant was accordingly taken into custody.

■■ Apparently, however, the pro se brief is attempting to raise a point upon the credibility of Willie Collins. The test of probable cause is not as stringent as the test required for proof beyond reasonable doubt. (See *People v. Creach* (1980), 79 Ill. 2d 96, 101-02, 402 N.E.2d 228, *cert. denied* (1980), ___ U.S. ___, 66 L. Ed. 2d 467, 101 S. Ct. 564.) In the case before us there was probable cause for the arrest based upon a statement to the police by a citizen as distinguished from a paid informer. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 225-26, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142, citing *People v. Hester* (1968), 39 Ill. 2d 489, 513-14, 237 N.E.2d 466.) In addition, the conclusion reached by the trial court in denying defendant's motion to quash the arrest may not be disturbed by this court unless it is manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280, and cases there cited.) In this regard the ruling of the trial court is strongly supported by the evidence.

## VI

■■ The pro se brief urges, in the heading to this point, defendant was denied his right to utilize notes taken by an assistant State's Attorney on

the so-called felony review unit. As the State properly points out, the reference in the pro se brief to any particular memorandum is vague. The record reflects a discussion between defense counsel and the prosecutor regarding an interview by the defense with the witness Woodoff Littleton. Defense counsel stated he had a felony review memo stating information regarding Littleton. The prosecutor responded that the memo contained information which the defense already had regarding two other witnesses. No further objection was made. Even assuming there was a violation of a discovery rule by the State, the pro se brief fails to show any prejudice in connection therewith. See *People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203.

### VII

The heading of this point sets out the police violated defendant's right to confront a witness by calling Carrie McGhee. The brief makes the point that this witness was not listed in the People's answer to defendant's discovery.

This witness was called for rebuttal only. Under Supreme Court Rule 412(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)), the People are required to disclose the names of those they intend to call as witnesses. However, as shown in *People v. Hine* (1980), 89 Ill. App. 3d 266, 269, 411 N.E.2d 930, this rule has no application to rebuttal witnesses.

The State raises the contention that although the defense witness Warren Harris was listed in discovery as an alibi witness, he did not so testify. Therefore, the prosecutors did not know they would be obliged to call Carrie McGhee in rebuttal until shortly after Harris had testified. The pro se brief relies on a statement by Woodoff Littleton regarding this matter. That statement is not a part of the record before us. It is added to the pro se brief as an appendix. We do not find the name of Carrie McGhee in this appendix but only an alleged statement by Littleton that "Pretty Boy and some lady" accompanied Milton Golden to Littleton's home.

■■ Finally, as the State points out, we find no surprise to the defendant and no prejudice. The record shows there was a *voir dire* examination of Carrie McGhee outside the presence of the jury before she testified. The trial judge then specifically told defense counsel there was no deadline; counsel should take his time and that counsel would be given "as much time as reasonable."

### VIII

The final issue raised in the pro se brief is denial of due process to the defendant because of the knowing use of perjured testimony by the prosecution. Aside from discussing cases which set out the general rule

regarding the use of perjured testimony by the State, the brief simply comments again upon Carrie McGhee. The pro se brief states that this witness "testified only when she was influenced by the States, who had first decided better against calling her as a witness for the States [*sic*]." This argument is without basis or merit.

For the reasons above shown the judgments appealed from are affirmed.

Judgments affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.