THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD BROWN, Defendant-Appellant.

First District (3rd Division)   No. 84—1273

Opinion filed June 30, 1986.—Rehearing denied September 9, 1986.

James J. Doherty, Public Defender, of Chicago (Kendall Hill and Suzanne Reisman, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Sharon Johnson Coleman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant Ronald Brown, a/k/a Ronald Benson, was charged with two counts of attempted murder and two counts of armed robbery. The trial court directed a verdict of not guilty on one count of attempted murder. After a jury trial defendant was convicted of the remaining charges and sentenced to 18 years' imprisonment.

On appeal defendant presents the following issues for review: (1) whether the trial judge erred in refusing to suppress defendant's post-arrest statement; (2) whether the trial court erred by admitting evidence of Ronald Brown's FBI-assigned alias; and (3) whether defendant was denied a fair trial by improper prosecutorial comments in closing argument.

On March 31, 1983, at 9:45 a.m., the Palos Hills police department dispatcher radioed a report of an armed robbery in progress. When an officer of the Worth police department responded, the dispatcher further reported that two suspects were driving a blue van

eastbound on 111th Street. Officers from both the Chicago Ridge and Worth police departments chased the van at high speed into a residential neighborhood. The van stopped at the end of Nordica street. The two suspects left the van and ran to the corner of a nearby house. They fired shots at a policeman who was following them, and they ran to the next street, where they encountered more policemen. Several shots were fired. Martin Watson, one of the suspects, was shot and killed. Shortly thereafter, at approximately 10:15 a.m., police arrested defendant near the scene of the shootout. They read defendant his *Miranda* rights and transported him to the Worth police station. Fifteen minutes later in the booking room, Officers Ostott and Muersch again read defendant his *Miranda* rights. Defendant answered, "I know my rights" and advised the officials that he chose not to speak to them. The officers left defendant without asking him any further questions.

At 11:15 a.m., two Federal Bureau of Investigation (FBI) agents came into the booking room and read defendant his rights; defendant once again said, "I know my rights." When asked if he would sign the waiver of rights form, defendant said he could not sign because he was handcuffed. After the agents told defendant that the handcuffs would be removed to enable him to sign the waiver, defendant replied, "Forget it." The agents signed a form affirming that defendant had been read his rights but had declined to waive them.

Around 11:45 a.m., defendant was told his *Miranda* rights a fourth time, this time by Detective Ward of the Palos Hills police department. Defendant nodded his head. He did not invoke his right to remain silent. When asked why he had been picked up, defendant replied that it was because of his past. Defendant stated that he did not know Martin Watson. However, when he was told of Watson's death, defendant assumed a fetal position and began to cry. Defendant stated that he wished that the police had shot him (defendant) also. Defendant said, "If they had given me any kind of job, even sweeping the floor, I wouldn't have had to do what I did today." When asked by the detective if he meant the bank robbery, defendant said that he never robbed a bank.

Defendant made a pretrial motion to suppress his post-arrest statement, which was denied. Defendant maintains that his right to remain silent was not scrupulously honored and that the court erred in refusing to suppress his statement.

The United States Supreme Court in *Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28, held:

"If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise."

However, the Supreme Court later noted in *Michigan v. Mosley* (1975), 423 U .S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321, that "a blanket prohibition against *** further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity." (423 U.S. 96, 102, 46 L. Ed. 2d 313, 320, 96 S. Ct. 321, 326.) The Court concluded that the admissibility of custodial statements made after an individual has decided to remain silent depends on whether his "right to cut off questioning" has been "scrupulously honored." 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

■ In applying these principles to the instant case, we find that defendant's right to remain silent was scrupulously honored. Officers Ostott and Muersch stopped talking to the defendant once defendant told them he wished to remain silent. Forty-five minutes later, the FBI agents merely read defendant his rights and asked him if he wished to waive his rights. When defendant indicated that he was not interested, the agent immediately ceased speaking to defendant and left the room. Neither the police officers nor the FBI agents interrogated defendant about the bank robbery. Once defendant invoked his right to remain silent the officers and agents ceased all communication with defendant. We note that "[n]either *Miranda* nor any broader constitutional mandate prohibits the police from making a subsequent request for a statement, as opposed to continued importunity or coercive interrogation." (*People v. Connell* (1980), 91 Ill. App. 3d 326, 332, 414 N.E.2d 796, quoting *People v. Brookshaw* (1973), 12 Ill. App. 3d 221, 224, 299 N.E.2d 20.) We find that neither the police officers nor the FBI agents violated defendant's right to remain silent.

■ We also find that Detective Ward did not violate defendant's right to remain silent. Detective Ward entered the booking room at approximately 11:45 a.m. and read defendant his rights. Defendant nodded, and Ward began questioning defendant. Defendant proceeded to make the statement which was put in evidence against him. Defendant contends that his nod does not constitute a valid relinquishment of his right to remain silent. We disagree.

It is the burden of the State to show that the accused knowingly

and voluntarily waived his right to remain silent before an accused's statement can be admitted into evidence. (*Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628; *People v. Savory* (1980), 82 Ill. App. 3d 767, 771, 403 N.E.2d 118, *cert. denied* (1981), 449 U.S. 1101, 66 L. Ed. 2d 827, 101 S. Ct. 896.) A waiver may be either express or implied, but waiver will not be implied either from a silent record or from the fact that the defendant made statements. (*Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628; *People v. Savory* (1980), 82 Ill. App. 3d 767, 772, 403 N.E.2d 118.) Here, we believe the State met its burden of proving waiver. Detective Ward testified that defendant was conscious and awake at the time that he nodded his head. At no time did defendant invoke his right to remain silent, as he had earlier that morning. From these circumstances we infer that defendant's nod constituted an express relinquishment of his right to remain silent. Detective Ward's questioning of defendant following defendant's nod was proper, and therefore we find that the court committed no error in refusing to suppress defendant's statement.

■ Next, defendant argues that the trial court erred in admitting into evidence defendant's driver's license which was issued under his alias. Defendant served as a witness for the Federal government in several organized-crime cases and, as a result, he became a participant in the Federal Witness Protection Program. As part of the program, the FBI gave defendant an alias, Ronald Benson, for his protection. Evidence that the defendant used an alias suggests to the jury that defendant has some prior criminal record or a reputation for unsavory activity. (*United States v. Williams* (7th Cir. 1984), 739 F.2d 297, 299.) It is well settled that the defendant's alias can be admitted into evidence only if the evidence is relevant to some fact at issue in the case. (*People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 99, 366 N.E.2d 433.) The State claims it was necessary to introduce defendant's driver's license to prove that defendant had blue eyes because a bank teller testified that one of the robbers had blue eyes. We find that the State's use of the license for this purpose was unjustifiable. Defendant and his eyes were present in court for the jury and the court to see. The State could have asked that the record reflect their observations regarding defendant's eye color. Since the evidence containing the alias was not needed to prove any fact at issue, it was error for the State to suggest in any way that defendant used an alias. *United States v. Williams* (7th Cir. 1984), 739 F.2d 297, 300; *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433.

■ To warrant reversal, defendant must show that he suffered

prejudice as a result of the admission of evidence disclosing his alias. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 17, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290.) Defendant has shown no such prejudice. We note that prior to trial, defendant's alias was disclosed to the jury when the court read his indictment. Defendant did not object to this. Moreover, since the properly admitted evidence of defendant's guilt is overwhelming, we find the State's error to be harmless. *People v. Poree* (1983), 119 Ill. App. 3d 590, 596-97, 456 N.E.2d 950.

■ Lastly, we address the question of whether defendant was prejudiced by the prosecutor's characterization of defendant's closing argument as a "smoke screen" and by the prosecutor's reference to "criminals" that "make mistakes." Defendant objected to the latter remark. The court sustained the objection and instructed the jury to disregard the comment.

When inflammatory prosecutorial comments constitute a material factor in a defendant's conviction, the offensive comments constitute prejudicial error. (*People v. Stock* (1974), 56 Ill. 2d 461, 472-73, 309 N.E.2d 19.) The test for determining whether the comments are a material factor is whether, absent such remarks, a contrary verdict might have been reached. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68.) Defendant has shown no prejudice. There is no indication in the record that the remarks influenced the jury's verdict in any way. There was overwhelming evidence of defendant's guilt. We find that no prejudicial error resulted from the prosecutor's remarks in closing argument. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 325, 379 N.E.2d 847.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P.J., and McNAMARA, J., concur.