THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TREMAINE BRACY *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 84—2371, 84—2634 cons.

Opinion filed December 29, 1986.

James J. Doherty, Public Defender, of Chicago (Thomas W. Murphy, Assistant Public Defender, of counsel), for appellant Tremaine Bracy.

Gwendolyn D. Anderson and George Jackson III, both of Chicago, for appellant Khalifa Hicks.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Peter D. Fischer, and Michael D. Krejci, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendants, Tremaine Bracy and Khalifa Hicks, were charged by indictment with the offenses of murder, armed robbery, home inva-

sion, and residential burglary. A motion for severance was granted, and the defendants were tried separately. Defendant Bracy waived his right to a trial by jury, and, after a bench trial, was found guilty of the offenses charged and sentenced to serve concurrent terms of 40 years for murder, 30 years for armed robbery, 30 years for home invasion, and 15 years for residential burglary. Defendant Hicks was tried simultaneously by a jury and was also found guilty of the offenses charged. He was sentenced to serve concurrent terms of 40 years for murder, 15 years for home invasion, 10 years for armed robbery, and 10 years for residential burglary. Both defendants appealed their convictions. Their cases have been consolidated in this court for purposes of review.

The issues presented for review in this appeal are: (1) whether defendant Bracy's inculpatory statement should have been suppressed as the fruit of an illegal arrest; (2) whether the trial court erred in allowing the State to introduce into evidence the summarized notes of defendant Bracy's confession given to an assistant State's Attorney where the summary was prepared and questions were asked of the defendant after defendant had allegedly invoked his right to counsel; and (3) whether the State's improper comments during the closing rebuttal argument in the Hicks case prejudiced defendant Hicks' right to a fair trial. For the reasons stated below, we affirm the judgment of the trial court in both the Bracy case and in the Hicks case.

Initially, we address defendant Bracy's contention that his inculpatory statement should have been suppressed as the fruit of his illegal arrest. Prior to the commencement of the bench trial, defendant Bracy presented a motion to quash his arrest and suppress his oral statement. The evidence produced at that hearing established the following pertinent facts.

Detective McHugh of the Chicago police department testified that at 9 a.m. on January 2, 1984, he was assigned to investigate the homicide of John Branch. The victim, a blind man, had been stabbed to death in his home at 4425 West Jackson in Chicago at approximately 6 a.m. on January 2, 1984. As part of his investigation into the incident, Detective McHugh interviewed Rochelle Bracy, defendant Bracy's mother, at her home at 11 a.m. on January 3, 1984. Mrs. Bracy informed Detective McHugh that her son Tremaine Bracy, Harriet Scott, and Khalifa Hicks were at her home on January 2, 1984, until 5 a.m., when the three left together to take Harriet Scott home. Rochelle Bracy further told Detective McHugh that during the afternoon of January 2, 1984, Harriet Scott told her that defendant Hicks had killed a blind man on Jackson Street.

At approximately 2 p.m. on January 3, 1984, Detective McHugh interviewed Harriet Scott at police headquarters. Ms. Scott had been brought to the police station for further questioning by other officers assigned to the case. Harriet Scott told Detective McHugh that she, defendant Bracy, and defendant Hicks left the home of Rochelle Bracy at 5 a.m. on January 2, 1984, to go down the street to a vacant apartment. Once at the vacant apartment, defendant Bracy and Harriet Scott engaged in sexual intercourse in a rear room of the apartment while defendant Hicks stayed in the front room. During the time that Ms. Scott and defendant Bracy were in the rear room, they heard noises at the front door. Defendant Bracy got up and left the apartment with defendant Hicks. Several minutes later, defendant Bracy called out to Harriet Scott from the victim's apartment and requested that she bring him his jacket and gloves. Defendants Bracy and Hicks were in the victim's apartment, which was located immediately adjacent to the vacant apartment. Ms. Scott told Detective McHugh that when she entered the victim's apartment, she found him lying on the floor with his hands and feet tied. At that point the victim was still alive. Defendants Bracy and Hicks told Ms. Scott to take the victim's television to her apartment. She complied with their request, and, upon returning to the victim's apartment, she found the victim's stereo sitting near the front door. At defendant Bracy's request, Ms. Scott took the stereo to defendant Bracy's home and left it at the back door. While she was returning to the victim's apartment, she met defendants Bracy and Hicks in the alley and noticed that the two were carrying more of the victim's property. Ms. Scott told Detective McHugh that at approximately 1:30 p.m. on January 2, 1984, defendant Bracy came to her home where he changed his clothes. Ms. Scott said that Bracy told her that he had killed John Branch because he had previously had the defendants (Bracy and Hicks) "beaten up."

Detective McHugh further testified that Ms. Scott consented to a search of her apartment. During the search, Detective McHugh and the other police officers recovered defendant Bracy's clothes, as well as some of the proceeds of the robbery. The police also recovered a guitar case in the alley in back of Rochelle Bracy's home that was subsequently identified as belonging to John Branch.

Several police officers testified that during the course of their investigation into the death of John Branch, they learned that the defendants had tried to rob the victim on a prior occasion. It was also revealed that the defendants believed that in response to their attempt to rob him, the victim had the defendants "beaten up." Although none of the individuals who were interviewed by the police

were actual witnesses to the killing of John Branch, nearly everyone to whom the police had spoken believed that the defendants were involved in the murder.

Defendant Bracy was arrested without a warrant by the Chicago police at approximately 12:55 p.m. on January 2, 1984. The record reveals that the defendant was given his *Miranda* warnings on at least three separate occasions before he was questioned. At approximately 4:30 p.m. on January 3, 1984, Detective McHugh had a conversation with defendant Bracy in which he told the defendant that Harriet Scott was cooperating with the police. Detective McHugh then left the defendant alone and went to talk to Richard Fields, Rochelle Bracy's live-in boyfriend.

Mr. Fields informed Detective McHugh that during the predawn hours of January 2, 1984, defendants Bracy and Hicks were at the apartment Mr. Fields shared with Rochelle Bracy. He said that defendant Hicks had a gun and that defendant Hicks told Mr. Fields that "he wanted to rob someone." Mr. Fields told Detective McHugh that Harriet Scott and defendants Bracy and Hicks left the apartment at approximately 5:30 a.m. Mr. Fields stated that sometime later that morning on January 2, 1984, Ms. Scott and defendants Bracy and Hicks returned to Rochelle Bracy's apartment, and that at that time they had a stereo and a guitar case in their possession.

Detective McHugh testified that after interviewing Mr. Fields he returned to the interrogation room where defendant Bracy was being held. At approximately 7 p.m. on January 3, 1984, defendant Bracy asked if he could use the bathroom in the police station. On his way out of the interrogation room, defendant Bracy saw Harriet Scott, who was also at the police station. He further observed the proceeds of the robbery, as well as his clothes which were recovered from Harriet Scott's apartment, lying on a desk. Upon returning to the interrogation room, Detective McHugh showed defendant Bracy a group of photographs and informed him that Harriet Scott had viewed the same group of photographs and identified defendant Hicks. He also testified that defendant Bracy identified Hicks from the photographs. Detective McHugh then read defendant Bracy his *Miranda* rights and asked if the defendant would talk to him. The defendant asked Detective McHugh to leave him alone for a few minutes because he needed time to think. Detective McHugh complied with defendant Bracy's request and sometime shortly thereafter the defendant voluntarily knocked on the door and Detective McHugh reentered the interrogation room and again read the defendant his rights. Defendant Bracy told Detective McHugh that he understood his rights. It was during

this subsequent questioning that the defendant gave his oral statement.

Detective McHugh also testified that defendant Bracy was not interrogated by any police officers from the time the defendant arrived at the police station at approximately 1 p.m. on January 2, 1984, until he gave his statement at about 7 p.m. on January 3, 1984.

At the conclusion of the arguments on the motion to suppress, the trial court ruled that there was no probable cause to arrest defendant Bracy and, therefore, the arrest was illegal. However, the court found that the defendant's oral statement given to Detective McHugh was admissible because there was sufficient attenuation between the illegal arrest and the defendant's oral statement to remove the taint of the illegal arrest and to allow the statement to be admitted into evidence at the defendant's trial. In its ruling the court relied upon the fact that the time between the arrest and the defendant's inculpatory statement was more than 24 hours, that the police misconduct was not deliberate or flagrant, nor was it engaged in for the purpose of obtaining the defendant's statement. On appeal, as stated previously, defendant Bracy argues that the trial court's ruling was erroneous.

■■ When a confession is obtained from a defendant through custodial interrogation after an illegal arrest, that confession must be suppressed unless the State can establish that intervening events have broken the causal connection between the illegal arrest and the confession so that the confession is sufficiently an independent act of free will. (*Taylor v. Alabama* (1982), 457 U.S. 687, 690, 73 L. Ed. 2d 314, 319, 102 S. Ct. 2664, 2667; *Brown v. Illinois* (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) The United States Supreme Court in *Brown v. Illinois* identified several factors that must be considered in determining whether a confession has been purged of the taint of the illegal arrest:

> "The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation], and, particularly, the purpose and flagrancy of the official misconduct are all relevant. [Citation.]" *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.

Applying these factors, the Supreme Court in *Brown* reviewed the record there and found that the defendant's first statement was separated from his illegal arrest by less than two hours, and that there

were no intervening circumstances whatsoever. Moreover, the court found that the impropriety of the arrest there was obvious since the police openly admitted that their purpose in arresting the defendant was only for investigation and for questioning. The court noted that the manner in which defendant Brown was arrested gave the appearance of having been calculated to cause surprise, fright, and confusion. As a result, the court found that the confession should have been suppressed.

Defendant Bracy argues that the circumstances of the instant case are very similar to those in *Brown*. We disagree. An application of the *Brown* analysis to the case at bar reveals that the Chicago police obtained Bracy's confession without exploitation of the illegality of the arrest. Unlike the arrest in *Brown*, there is nothing in the record here which leads this court to believe that Bracy's arrest was violent or in any way designed to cause surprise, fright, or confusion. Further there is no evidence here of any intentional misconduct on the part of the police which would indicate that Bracy was arrested in order to coerce his confession or as a pretext for an exploratory fishing expedition as was apparent in *Brown*. Nor can we say from the record that the police were acting upon such an absence of probable cause as to render any belief on their part that probable cause existed for the arrest entirely unreasonable. (*People v. Williams* (1978), 62 Ill. App. 3d 874, 879, 379 N.E.2d 1222; *People v. Fields* (1975), 31 Ill. App. 3d 458, 468, 334 N.E.2d 752.) Under the facts presented here, the police obviously had reason to believe that Bracy was involved in the murder. Thus, we cannot say that this is a case of flagrant official misconduct.

We note further that, unlike the situation in *Brown* where there was no intervening event of significance, in the instant case there clearly existed several intervening factors to break the causal connection between the defendant's arrest and statement. First, Bracy saw his girl friend, Harriet Scott, at the station and was told that she was cooperating with the police. Second, Bracy saw his clothes which had been retrieved from the home of Harriet Scott, as well as the proceeds of the robbery, on a desk in a nearby office. (See *In re R.S.* (1981), 93 Ill. App. 3d 941, 946, 418 N.E.2d 195; 3 W. LaFave, Search & Seizure: A Treatise on the Fourth Amendment sec. 11.4(b), at 637 (1978).) Third, defendant Bracy identified codefendant Hicks in a photographic lineup. Fourth, prior to admitting his involvement in the crime, Bracy was allowed time to be alone so he could think, and then shortly thereafter, Bracy, himself, voluntarily reinitiated the interrogation. *People v. Gangestad* (1982), 105 Ill. App. 3d 774, 780, 434

N.E.2d 841.

Regarding the two remaining factors of the *Brown* analysis, we note that there was a time lapse of over 24 hours between the time of defendant Bracy's arrest and the time of his confession. Also, during this time he was not interrogated or questioned until after he viewed the proceeds of the robbery in a nearby office and saw Harriet Scott, whom he knew to be cooperating with the police. In contrast, there was only a two-hour time span in *Brown* between the defendant's arrest and confession, and the defendant there was continuously interrogated before he made his inculpatory statement.

Lastly, it is undisputed here that Bracy was given the *Miranda* warnings on at least three separate occasions throughout the time he was in custody prior to making his statement and that he understood those warnings.

■ It is well settled that a trial court's finding on a motion to suppress will not be disturbed on appeal unless the trial court's decision is manifestly erroneous. (*People v. Long* (1983), 99 Ill. 2d 219, 231, 457 N.E.2d 1252.) We find that the instant record reflects sufficient attenuation between the arrest and the defendant's statement to remove any taint which would permit the statement to be received into evidence against the defendant. Thus, the trial court did not commit error in denying defendant Bracy's motion to suppress.

■ Defendant Bracy next argues that his sixth amendment right to counsel was violated when the trial court allowed the State to introduce into evidence the handwritten notes of the defendant's confession prepared by Assistant State's Attorney Michael Balskus, as well as Balskus' testimony regarding Bracy's acknowledgement of those notes. The State maintains that the trial court properly admitted the written statement into evidence since the statement itself was given before Bracy invoked his right to counsel even though the statement was not reduced to writing by the assistant State's Attorney until after Bracy invoked his right.

At trial Assistant State's Attorney Balskus testified that on January 3, 1984, at approximately 10 p.m. he interviewed defendant Bracy at police headquarters. Assistant State's Attorney Balskus stated that he read the defendant his *Miranda* rights, and immediately thereafter the defendant gave his oral statement. After the defendant confessed to his involvement in the crime, Assistant State's Attorney Balskus asked Bracy if he would give his statement to a court reporter. Bracy agreed, and at approximately 1:30 a.m. Assistant State's Attorney Balskus returned with a court reporter to record the interview of defendant Bracy. As Assistant State's Attorney

Balskus was again reading Bracy his *Miranda* rights, the defendant interrupted and said that he would not talk to the court reporter and that he wanted to talk to his lawyer. Assistant State's Attorney Balskus then asked Bracy if he had been advised of his rights before, and if so, whether he understood those rights. Bracy replied "yes." Bracy was also asked if he had previously requested an attorney, and he responded "no." Assistant State's Attorney Balskus then left the interrogation room and summarized in writing Bracy's oral statement on a statement form. A short time later, he returned with the statement and asked Bracy if it was an accurate account of his earlier statement. Bracy read the statement and stated it was accurate. He also acknowledged that his oral statement was given before he requested an attorney. Assistant State's Attorney Balskus testified that both he and Detective Grubner then signed the statement form. Balskus did not ask Bracy to sign the statement, and Bracy did not sign it. On the State's motion, Assistant State's Attorney Balskus' written summary of Bracy's oral statement was admitted into evidence.

In considering this issue, we note that Bracy does not dispute the voluntariness of his oral confession made to Assistant State's Attorney Balskus. Bracy only challenges the trial court's action in allowing the State to introduce into evidence the written notes of the defendant's confession prepared by Assistant State's Attorney Balskus, as well as his testimony regarding Bracy's verification of the accuracy of the statement which occurred after he had requested counsel.

In support of his argument, Bracy cites *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. In *Edwards* the court held that when an accused has invoked his right to counsel, a valid waiver of that right cannot be established by merely showing that he later responded to further police-initiated custodial interrogation even though he had been advised of his rights. An accused who has expressed his desire to deal with the police through counsel is not subject to further interrogation until counsel has been made available or unless the accused himself initiates further communications, exchanges, or conversations with the police. 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1884-85.

While we find the propriety of the trial court's action questionable in allowing the State to admit the written summary, as well as Balskus' testimony regarding Bracy's statements concerning the accuracy of the summary into evidence, we, nevertheless, find it unnecessary to consider those issues here. An examination of the entire record in this case, clearly indicates, we believe, that any error which

might have resulted from the admission of the summarized statement and the testimony regarding the defendant's verification of its accuracy was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 22-26, 17 L. Ed. 2d 705, 709-11, 87 S. Ct. 824, 827-29; *People v. Warner* (1986), 146 Ill. App. 3d 370, 381, 496 N.E.2d 1010.

We find that the record here establishes that defendant Bracy was guilty of the murder of John Branch. Both defendants confessed their involvement in the crime, each blaming the other for the murder. Harriet Scott testified that shortly after the incident occurred, defendant Bracy brought some of the proceeds from the robbery to her apartment. Bracy told her that he killed John Branch because Branch had had defendant Bracy beaten up on a prior occasion. Mr. Fields also testified that defendant Bracy attempted to store some of the proceeds from the robbery at the home Mr. Fields shared with Bracy's mother. All of this evidence taken together clearly proved that defendant Bracy was guilty beyond a reasonable doubt.

Additionally, Assistant State's Attorney Balskus had already testified as to the defendant's oral statement made prior to the time the defendant invoked his right to counsel, before the summary and the evidence of Bracy's verification of the summary were introduced into evidence. Neither the admission of this prior statement nor its voluntariness is disputed by Bracy on appeal. Thus, the admission of the written summary and Bracy's statement regarding its accuracy, under the circumstances here, were cumulative evidence at best. Hence, we conclude that this evidence did not materially contribute to the defendant's conviction and was not so prejudicial as to violate his right to a fair trial. See *People v. Slaughter* (1977), 55 Ill. App. 3d 973, 371 N.E.2d 666.

In his appeal defendant Hicks contends that he was denied a fair trial due to improper comments made by the prosecutor during his closing rebuttal argument. Specifically, the defendant contends that the prosecutor argued facts not in evidence and interjected his personal opinion of the defendant's guilt. Defendant Hicks further argues that the prosecutor improperly suggested that the defendant had a duty to call certain witnesses.

A prosecutor is allowed a great deal of latitude in making closing argument, and the trial court's determination as to the prejudicial effect of the closing argument will generally be followed absent a clear abuse of discretion. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 N.E.2d 847.) When inflammatory prosecutorial comments constitute a material factor in a defendant's conviction, the

offensive comments constitute prejudicial error. (*People v. Brown* (1986), 146 Ill. App. 3d 101, 106, 496 N.E.2d 1020.) In order to determine whether the comments are a material factor requiring reversal, the court must determine whether, absent such remarks, a contrary verdict might have been reached. *People v. Echols* (1986), 146 Ill. App. 3d 965, 974, 497 N.E.2d 321.

■ In his argument that the prosecutor argued facts not in evidence, defendant Hicks points to several comments made by the prosecutor, namely, that defendant Hicks was the "heavy man" and instigated the crime; that the crime took three to four hours to commit; and that defendant Hicks possibly killed the victim because the victim recognized his voice and could identify him. After reviewing the record, we find that there was sufficient evidence introduced at the defendant's trial to support each of these conclusions offered by the prosecutor. Furthermore, at the very least, these statements were a fair comment based on reasonable inferences from the evidence introduced and admitted at the trial. Arguments based on facts or reasonable inferences drawn from the facts are within the scope of proper argument although they reflect unfavorably on the accused. (*People v. Taylor* (1986), 146 Ill. App. 3d 45, 50, 496 N.E.2d 263.) These statements made by the prosecutor here did not deny the defendant a fair trial and did not result in prejudicial error requiring reversal. See *People v. Spann* (1981), 97 Ill. App. 3d 670, 422 N.E.2d 1051.

■ Defendant Hicks also complains that he was prejudiced when the prosecutor interjected his personal opinion of the defendant's guilt. While it is considered improper for the prosecutor to state his opinion as to the guilt or innocence of the defendant (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 108, 289 N.E.2d 256), the trial court did instruct the jury that closing arguments are not evidence and that any argument or statement made by the attorneys which is not based on the evidence should be disregarded (Illinois Pattern Jury Instruction, Criminal, No. 1.03 (2d ed. 1981)). As this court has held, instructions of this nature can cure any potential prejudice resulting from a prosecutor's improper remarks in closing argument. (*People v. Rowe* (1983), 115 Ill. App. 3d 322, 328, 450 N.E.2d 804; *People v. Spann* (1981), 97 Ill. App. 3d 670, 678, 422 N.E.2d 1051.) Moreover, the record indicates here that defense counsel did not object to the prosecutor's statement Hicks claims expressed an opinion concerning his guilt and that this challenged statement was made only once in rebuttal and in response to the argument of defendant Hicks in his closing argument. When considering the prosecutor's remark in light of the context of the entire closing argument, as we are required to do (*Peo-*

*ple v. Barnes* (1983), 117 Ill. App. 3d 965, 977, 453 N.E.2d 1371), we find that this remark, in any event, did not result in substantial prejudice to the defendant and that the verdict would not have been different had the comment not been made. See *People v. Brown* (1986), 146 Ill. App. 3d 101, 496 N.E.2d 1020.

We further find that these claimed improper prosecutorial comments cited by the defendant here were also harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt. See *People v. Echols* (1986), 146 Ill. App. 3d 965, 497 N.E.2d 321; *People v. Smith* (1984), 127 Ill. App. 3d 622, 469 N.E.2d 634.

▪ Defendant Hicks also contends that the prosecutor improperly suggested that the defendant had a duty to call certain witnesses. Hicks, however, did not raise this issue in his post-trial motion, and for that reason, we consider this issue waived. (*People v. Williams* (1986), 146 Ill. App. 3d 767, 772, 497 N.E.2d 377.) While under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)) this court may choose to consider errors that have not been properly preserved for review where the evidence at trial is closely balanced or the errors would deprive the defendant of a fair and impartial trial (*People v. Camp* (1984), 128 Ill. App. 3d 223, 233, 470 N.E.2d 540), we find that invocation of Rule 615(a) is clearly improper in the instant case. The evidence of the defendant's guilt is not so closely balanced that the alleged error could have deprived him of a fair trial.

The evidence produced at defendant Hick's trial was substantially similar to that produced at the Bracy trial, which was set forth earlier in this opinion. As stated previously, both defendants confessed their involvement in the crime, but each blamed the other for the murder. At trial, Harriet Scott, who was in the victim's apartment intermittently during the time the incident occurred, testified that she observed defendant Hicks kick the victim five times in the ribs while the victim was lying on the floor with his hands and feet tied. Also, Mr. Fields testified that on the eve of the murder, defendant Hicks had in his possession a "starter gun," and told Mr. Fields that he wanted to rob someone to get some money. Annette Haggard, a neighbor of Hicks, testified that Hicks told her that he and his friend had just murdered someone. Hicks also attempted to hide his blood-stained jacket, as well as the victim's television set, at Annette Haggard's home. Finally, Hicks confessed his involvement in the murder to both Detective McHugh and Assistant State's Attorney Balskus. Clearly, the evidence adduced at trial, and the logical inferences therefrom, necessarily lead to the conclusion that defendant Hicks was guilty of

the crimes charged, and therefore we do not find it necessary to consider the alleged error under the plain-error doctrine of Supreme Court Rule 615(a).

Accordingly, for all the foregoing reasons, we affirm the judgment of conviction entered against defendant Tremaine Bracy and the judgment of conviction entered against defendant Khalifa Hicks.

Judgment affirmed.

CAMPBELL and O'CONNOR, JJ., concur.