THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURTIS HENDERSON (Impleaded), Defendant-Appellant.

First District (3rd Division)   No. 61086 (A)

Opinion filed June 3, 1976.

166

James J. Doherty, Public Defender, of Chicago (William D. Trude and Marilyn D. Israel, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Michael E. Shabat, Laurence J. Bolon, and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Curtis Henderson and Charles Allen were jointly indicted and jointly tried for murder and attempt robbery. They were tried by a jury, found guilty of both crimes and sentenced to 40 to 80 years for murder and 5 to 10 years for attempt robbery. They filed separate appeals. Most of the facts pertinent to Henderson's appeal and many of the issues raised by him are similar to those detailed in *People v. Allen* (1976), 36 Ill. App. 3d 821, 344 N.E.2d 825.

Charles Hayes and his wife, Janice, were shopping in a grocery store about 11 o'clock at night. Four youths, Henderson, Allen, Paul Bardney and Terry Davis, came into the store and stayed until the Hayeses left. When the Hayeses were about to enter their automobile that was parked nearby, two youths approached them. They said that Mrs. Hayes should get into the car, so she got in and sat down on the passenger side which was flanking the curb. One of the boys pointed a shotgun at Hayes while the other searched his pockets. The three were standing on the sidewalk near the passenger side of the car. When the boy who was frisking Hayes bent down, Mrs. Hayes recognized him as one of those who had been in the store. Hayes tried to seize the shotgun and the boy with the gun shot and killed him. After the blast, the boys fled. The next day, Mrs. Hayes viewed two separate line-ups and identified Henderson each time as the boy who had searched her husband.

■■ The first issue Henderson presents for our consideration is his claim that he should have been discharged because he was jailed for over

120 days without having been brought to trial. Section 103—5(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 103—5(a)) requires that anyone held in custody for a crime shall be tried within 120 days from the day he was taken into custody unless the defendant himself occasions the delay. Section 103—5(d) (Ill. Rev. Stat. 1971, ch. 38, par. 103—5(d)) mandates the discharge of any person not tried within this period.

Henderson was 15 years old when he was arrested on October 18, 1972. His case was transferred from the Juvenile Court to the Criminal Court pursuant to section 702—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7(3)). The case was continued to November 13, 1972, and later postponed on the State's motion until November 22, 1972. A preliminary hearing was held, he was bound over to the grand jury and indicted on February 6, 1973. The next day counsel was appointed to represent him. Two days later (112 days after the arrest) the defendant and the State filed reciprocal discovery motions. The case was continued until March 9, 1973, and the continuance, over the defendant's objection, was attributed to him. On March 9, 1973, Henderson filed a motion to quash his arrest and to suppress evidence. On June 25, 1973 (248 days after the arrest), the trial court denied his motion for discharge and began the trial.

Under certain circumstances a delay cannot be charged to a defendant who has filed a discovery motion. *(People v. Nunnery* (1973), 54 Ill. 2d 372, 297 N.E.2d 129.) Whether a discovery motion constitutes delay attributable to the defendant often depends upon whether it is simple and easily answered or whether it is complex and difficult to answer:

> "A discovery motion which the State can answer quickly would cause little or no delay; the State should not be permitted to use such a motion as an excuse to toll the statute implementing the constitutional right to a speedy trial. On the other hand, a discovery motion that calls for answers which are not quickly available or requests answers replete in detail would cause a legitimate delay; such a motion is properly attributable to a defendant and tolls the running of the statutory period. Whether a motion falls into the former or the latter category would depend on the facts of each case." *People v. Scott* (1973), 13 Ill. App. 3d 620, 630, 301 N.E.2d 118.

The determination of whether the trial court abused its discretion in attributing a delay to a defendant will be made in light of facts known to the court regardless of whether hindsight proves that the defendant's motion was, in fact, quickly and easily answered. *People v. Green* (1975), 30 Ill. App. 3d 1000, 333 N.E.2d 478.

Henderson's motion, in contrast to the State's brief one, was a three-

page, single-spaced, comprehensive document nearly identical to the one filed in *People v. Green.* There the court held the motion to constitute delay attributable to the defendant. We see no reason to do otherwise. Nor does the statement made by Henderson's attorney at the time he filed the motion, "I don't want anything in this motion to cause any delay in the trial" compel a different result. He did not make further reference to the subject, offer to withdraw the motion or to waive any part of it. Contrast this to the statement made by the defendant's counsel in *People v. Vanderbilt* (1975), 27 Ill. App. 3d 168, 326 N.E.2d 418, where a discovery motion was filed: "I am filing this [motion] without any intention of delaying the trial. If there are any parts of the motion that would delay the trial, I would be willing to waive those parts." In *Vanderbilt* this statement was construed as indicating a willingness to withdraw the motion in its entirety; it was therefore held that the defendant's discovery motion did not occasion the delay in his trial.

Normally, a defendant would have to be tried or discharged 120 days after the discovery motion was filed, but Henderson's motion to quash his arrest and to suppress evidence began the 120-day period anew. *(People v. Green.)* His motion for discharge was properly denied since his trial began before this period was over.

● 2 Henderson next contends that the trial court committed reversible error when it denied his motion for a separate trial. The governing principle is that persons jointly indicted should be tried together unless their defenses are so antagonistic that a severance is necessary to insure a fair trial *(People v. Grilec* (1954), 2 Ill. 2d 538, 119 N.E.2d 232.) Whether a joint trial should be granted is largely within the trial court's discretion. *(People v. Wilson* (1963), 29 Ill. 2d 82, 193 N.E.2d 449.) The motion for a severance was predicated on information Henderson's attorney had received from Allen's attorney that Allen planned to testify that Henderson and Paul Bardney (who was never indicted or tried, but who appeared as a State's witness) had committed the crimes. But Allen's testimony turned out to be quite different from what Henderson's lawyer anticipated. Upon cross-examination Allen stated that he had discovered while in jail who was with Bardney when the victim was shot and killed and that it was not Henderson. The net effect of this statement was to render the severance issue moot. Henderson may have had grounds for a severance before the trial began, but Allen's statement accusing Bardney and some unidentified third party of the crimes dissolved any antagonism that may have existed between their defenses.

Another issue raised by Henderson is that the prosecutor's closing argument denied him a fair trial. During the trial it was undisputed that Henderson, Allen, Bardney and Davis were near the scene of the attempted robbery and murder a few minutes before the crimes were

committed. It was equally unchallenged that the four of them fled the scene after Hayes was shot and killed and that they met at Henderson's home a short time later. Henderson, Bardney and Davis were arrested the next day; Allen was arrested after being implicated by the other three. At the time of Allen's arrest two sawed-off shotguns were found in the apartment where he was sleeping. Allen told the police that Bardney shot Hayes and said at the trial that he saw Bardney with a sawed-off shotgun a few minutes before the slaying. Davis, Henderson's nephew, testified that he saw Bardney carrying a sawed-off shotgun before, he said, Bardney and Allen followed Hayes and his wife out of the grocery store. He also testified that Bardney admitted at Henderson's apartment that he had shot Hayes. Bardney, on the other hand, told the police that Allen had shot Hayes, but he admitted that he owned the shotgun he said Allen carried with him to Henderson's home. Henderson testified that he was in the store when Allen and Bardney entered it; that he was inside when they left; that while inside he heard the shotgun blast, and that he and Davis ran outside, saw Hayes on the ground, and ran home to find Allen and Bardney already there. His testimony, of course, was contradicted by that of Mrs. Hayes who said that she saw the youth who frisked her husband while the other trained a sawed-off shotgun on him. Both in open court and in police line-ups she identified this youth as Henderson.

■■ In particular, Henderson objects to the prosecutor's remark: "I will tell you my opinion. My opinion is that according to the evidence, any kind of opinion you can give, the four of them were guilty," and to his observation that the State could have successfully prosecuted all four if it had chosen to do so. However, there is nothing far-fetched about the prosecutor's conclusions in light of the evidence and, with reference to Henderson, nothing that constitutes reversible error. A prosecutor may properly express his opinion in closing argument where it is apparent that it is based solely on the evidence. *(People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.) The prosecutor prefaced his remarks with a statement that he was giving his opinion. It should have been apparent to the jury that his opinion concerning the guilt of all four represented his evaluation, however debatable, of the admissible evidence. Nothing that the defendant has shown to us indicates that the prosecutor went beyond the record in reaching his conclusion and expressing his opinion.

■■ An additional issue presented by Henderson is that he was not proven guilty beyond a reasonable doubt. He contends, quite incorrectly, that the only evidence implicating him in the attempted robbery and murder was the testimony of Janice Hayes. There was, for example, the circumstantial evidence arising from the fact that he was present in the grocery store moments before Hayes was shot, from the fact that he fled from the scene and regrouped with the other three at his apartment

shortly after the attempted robbery and murder, and from the fact that he tried to escape when the police sought to arrest him. But there is no need to consider the weight of this evidence, for the positive testimony of one credible witness is sufficient to sustain a conviction if the witness had an adequate opportunity to observe the accused. *(People v. Tripp* (1974), 19 Ill.App. 3d 200, 311 N.E.2d 168; *People v. Davis* (1966), 70 Ill. App. 2d 419, 218 N.E.2d 3.) Janice Hayes observed Henderson in the grocery store and when he went through her husband's pockets. She identified him immediately when she saw him in a line-up that included Bardney and Davis, and repeated the identification in a second line-up that included Allen. Prior to this time, Mrs. Hayes had told the police that she could identify the robber who had the shotgun, but she was unable to do so among those who were in either the first or second group of suspects. Although this inability might reflect on her power of observation, there is no ground for reversal because of this. Her credibility and the sufficiency of her identification were questions of fact for the jury. A jury's finding will not be upset on review unless the testimony is so unsatisfactory that it creates a reasonable doubt of the accused's guilt. *(People v. Parker* (1968), 98 Ill. App. 2d 146, 240 N.E.2d 475; *cf. People v. Willis* (1970), 126 Ill.App. 2d 348, 261 N.E.2d 723.) The evidence in this case was not of that character.

Henderson submits that his being sentenced for both attempt robbery and murder was erroneous since there was no evidence that the crimes were independently motivated or separable acts. Where "the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense." (Ill. Rev. Stat. 1973, ch. 38, par. 3—3(a).) The companion sentencing provision reads: "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).) A parallel proscription has developed in case law that an accused may not be convicted or sentenced either consecutively or concurrently for multiple offenses arising out of the same act or conduct and that judgment and sentence can be imposed only for the most serious offense. (See, *e.g., People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) This proscription has been interpreted to mean that a sentence cannot be imposed for both an attempt to commit robbery and felony murder where the defendant and his codefendant killed their victim when he sought to grab a gun in their possession. *(People v. Holiday* (1974), 21 Ill. App. 3d 796, 316 N.E.2d 236.) Yet the thrust of this case was weakened, if not implicitly rejected, in the subsequent decision of *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819. In *Williams* a man was shot and killed after scuffling with two

intruders who had forcibly entered his home for the purpose of robbing the residents. The reviewing court held that the convictions and sentences for both murder and armed robbery could stand,

" * * * even though the activity constituting both offenses was a series of very closely related acts. The purpose of the entry was robbery, not murder, and that objective changed to murder only when the robbers were confronted by Mr. Calderone with a gun in his hand. Then, they chose to commit a separate act for the purpose of killing Mr. Calderone. That shooting can be viewed as means of removing an obstacle to their original objective of robbery, but it is also evident that at least part of their reason for killing was to avoid injury or apprehension by Mr. Calderone." 60 Ill. 2d 1, 14.

■■ So too in the present case. At least part of the reason, we must surmise, the gunman shot Hayes was to avoid injury or apprehension. In these circumstances, the gunman, and Henderson as his accomplice, could be convicted and sentenced for both attempt armed robbery and murder. See also *People v. Williams* (1971), 3 Ill. App. 3d 1, 279 N.E.2d 100.

■■ The defendant's final objection to the decision reached by the trial court concerns the length of his sentence. He contends that his sentence of 40 to 80 years for murder violated section 11, article 1, of the Illinois Constitution of 1970, which provides that criminal penalties "shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Henderson was 15 years old when the crimes were committed and he had never been convicted of a crime or adjudged delinquent. However, he was a principal in an armed robbery where a shotgun was used to kill the man he was attempting to rob. As the trial court remarked, prior to imposing sentence:

"These two young men according to the testimony that I heard in the trial of this cause were youngsters who unfortunately did not play ball; they played with sawed-off shotguns. This was a needless killing, done with premeditation because a sawed-off shotgun only kills people, a sixteen millimeter shotgun that tore apart the stomach of the deceased who had a right to life just like these young men have a right to come before the Court and ask for mercy and justice at this time."

The power to reduce sentences must be used with caution *(People v. Valentine* (1965), 60 Ill. App. 2d 339, 208 N.E.2d 595), and we see no reason, in contemplation of the Unified Code of Corrections and the Department of Corrections Regulations (Ill. Rev. Stat. 1973, ch. 38, par. 1003—3—3(a)(1); Ill. Dept. of Corr., Admin. Reg. 813) which permit a

prisoner—irrespective of the length of his minimum sentence—to be paroled in 11 years and 3 months, to reduce the carefully considered sentence imposed by the judge who observed the defendant during the trial and who heard him testify.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.