UNITED STATES of America ex rel. Curtis HENDERSON, Petitioner,

v.

James THIERET, Respondent.

No. 84 C 7475.

United States District Court, N.D. Illinois, E.D.

Oct. 23, 1987.

Jeffrey E. Colman, Richard D. Murphy, Jr., Jenner & Block, Chicago, Ill., for petitioner.

David E. Bindi, Mark Rotert, Asst. Attys. Gen., Neil F. Hartigan, Atty. Gen., Crim. Appeals Div., Chicago, Ill., for respondent.

## OPINION

ZAGEL, District Judge.

### I

Curtis Henderson, convicted in state court of murder and attempt robbery, seeks a writ of habeas corpus.

The crimes occurred on an October night in 1972. The victim, Charles Hayes, and his wife were shopping in a grocery store. Four youths (Henderson, Allen, Bardney and Davis) entered the store and remained until the Hayeses departed. As the Hayeses were about to enter their automobile parked nearby, two youths approached them, one of whom was armed with a sawed-off shotgun, and told Mrs. Hayes to get into the car which she did. One youth pointed a shotgun at Mr. Hayes while the other searched Mr. Hayes's pockets. All three were standing near the passenger side of the car where Mrs. Hayes sat. As he bent down, she recognized the youth searching her husband as one of the boys who had been in the store. Then Mr. Hayes tried to grasp the shotgun, but the boy holding it shot and killed him. After the shot was fired both youths fled. The next day, Mrs. Hayes viewed two separate lineups and identified Henderson each time as the one who had searched her husband. She did not identify Allen, Bardney or Davis.

It was undisputed that all four youths were near the scene of the crimes shortly before they occurred and that all four fled the scene after they occurred and that they met at Henderson's home a short time later.

Henderson, Bardney and Davis were arrested the following evening despite their attempt to flee when police approached. They admitted being in the store prior to the shooting but denied involvement. They implicated Allen.

The versions of other events given by the four differ.

Allen, who was tried and convicted with Henderson, told the police that Bardney shot Hayes and said at trial that he saw Bardney with a sawed-off shotgun a few minutes before the slaying. He also testified that some unidentified person was with Bardney at the time of the shooting and it was not Henderson. At the time of his, Allen's, arrest, two sawed-off shotguns were found in the apartment where he was sleeping.

Davis, who is Henderson's nephew, testified that he saw Bardney carrying a sawed-off shotgun before the incident and that Bardney and Allen followed Hayes and his wife out of the grocery store. He further said that Bardney admitted shooting Hayes, the admission occurring after they had returned to Henderson's apartment.

Bardney, a People's witness, testified that Allen shot Hayes though he admitted he owned the shotgun that Allen carried.

Henderson testified that he was inside the grocery store when he heard a shotgun blast, that he and Davis ran out and saw Hayes on the ground, and that they ran home where they found Allen and Bardney, already arrived.

Mrs. Hayes contradicted Henderson. She identified him in open court and police line-ups as the one who searched her husband. She stated she was not in a position to see the man who held the gun.

The jury convicted Henderson (and Allen). He was sentenced to 40 to 80 years for murder and 5 to 10 years for attempt robbery.

He appealed and raised six points against his conviction and sentence: (1) denial of his statutory right to trial within 120 days from arrest (Ill.Rev.Stat. ch. 38, sec. 103–5 (1971)); (2) denial of his motion for severance of his trial from that of Allen; (3) improper expression of opinion by the prosecutor during closing argument; (4) failure to prove his guilt beyond a reasonable doubt; (5) improper passage of sentences for both crimes since the crimes were not separable; and (6) passage of a sentence too severe to be consistent with the state constitutional provision setting forth sentencing criteria. The Appellate Court rejected these claims and affirmed the convictions and sentences. *People v. Henderson*, 39 Ill.App.3d 164, 351 N.E.2d 225 (1st Dist. 1976). A pro se petition for leave to appeal was denied by the Supreme Court of Illinois on September 29, 1976.

On November 16, 1979 Henderson sought state post-conviction relief pursuant to Ill.Rev.Stat. ch. 38., art. 122 (1985). He raised again the claim of denial of statutory speedy trial to which he added a claim that his federal speedy trial rights were violated.

A further paragraph, improperly phrased, contained essentially a claim that evidence adduced at trial was prejudicial to the extent it denied him his federal constitutional rights. The Cook County Public Defender who had represented Henderson at trial and on appeal was appointed to represent him. On July 16, 1980, the Assistant Public Defender informed the post-conviction hearing court that Henderson complained to her thirteen days before that his trial counsel failed to properly investigate his case and talk to certain witnesses that Henderson mentioned to trial counsel, specifically "a store clerk he felt would have been helpful to his case." Henderson, she said, "did not think the Public Defender ever contacted him." (Petition Exhibit C at 3, 8–9). She then asked leave to withdraw because she and trial counsel were from the same Public Defender's Office and, under state law, she had a conflict of interest. The post-conviction court rejected the request to withdraw and considered the claim of incompetent counsel. He denied it on the apparent grounds that there was no evidence that trial counsel didn't talk to the store clerk and that if he had, "it might have been his judgment that if he put him on the witness stand that he would not help ... the defense." The Assistant Public Defender requested, and was granted, time to examine the trial transcript to determine whether additional issues should be raised. On October 30, 1980, she appeared again and stated that, after examining the trial transcript, she had no wish to amend the petition. She restated for the record the claims made at the previous hearing and the rulings thereon, doing so because the trial judge had died. The Court then denied the post-conviction petition.

Henderson appealed this denial and the State Appellate Defender was appointed to represent him. On appeal his sole claim was that he was entitled to post-conviction counsel other than the public defender when he asserted that the public defender who represented him at trial had been incompetent. The Appellate Court found the argument unpersuasive in light of *People v. Neely*, 85 Ill.App.3d 1016, 41 Ill.Dec. 316, 407 N.E.2d 814 (1st Dist.1980). The Court also found that Henderson conceded post-conviction counsel demonstrated compliance with the obligations set forth by state Supreme Court rules. Finally, in its unpublished Rule 23 Order affirming the denial of the petition the Court said:

It is well established that errors in judgment or trial strategy do not estab-

lish incompetency of trial counsel. (*People v. Murphy* (1978) 72 Ill.2d 421 [21 Ill.Dec. 350], 381 N.E.2d 677.) Incompetency of counsel requires a showing that trial counsel was actually incompetent in the performance of his duties as trial attorney in that substantial prejudice resulted to defendant without which the result of the trial probably would have been different. (*People v. Talley* (1981), 97 Ill.App.3d 439, 443 [52 Ill.Dec. 875], 422 N.E.2d 1084.) Defendant's statement to the assistant public defender appointed to represent him in the post-conviction proceedings, that a store clerk could have testified that he was inside the store at the time of the shooting, was not a sufficient allegation of a denial of a constitutional right. The assistant public defender suggested in the trial court during the post-conviction proceedings that it would have been appropriate, many years after the shooting, to begin a search for the store clerk and, presumably, to amend the post-conviction petition accordingly. However, as the trial court noted, the decision whether to call such a witness would have been a question of trial strategy. Defendant himself did testify at trial that he was in the store at the time of the shooting, but his testimony was contradicted by the testimony of at least one accomplice and by an eyewitness, the victim's wife. Since any decision to call such a witness clearly is one involving a matter of trial strategy and the credible testimony of one witness is sufficient to sustain a conviction if the witness had an adequate opportunity to observe the accused (*People v. Henderson* [1976], 39 Ill.App.3d 164, 170, 351 N.E.2d 225), the post-conviction petition was properly dismissed for failure to allege a substantial violation of constitutional rights. Under these circumstances, we find no inadequacy in the representation of defendant by another assistant public defender in the post-conviction proceedings.

Prior to filing his state post-conviction petition, Henderson sought a writ of habeas corpus from this Court. *United States ex rel. Henderson v. Franzen*, No. 79 C 588 (N.D.Ill. June 21, 1979). He raised the same issues he raised on his direct appeal except that he omitted the claims about improper sentence. On June 21, 1979 Judge Marshall considered the merits of the claims and dismissed the petition. Henderson was not represented by counsel at this proceeding and did not seek to appeal the action of the District Judge.

In July, 1984, Henderson filed a second petition for the writ in the Southern District of Illinois which petition was transferred and received here on August 29, 1984. Counsel was appointed for petitioner and on January 16, 1986 an amended petition for the writ was filed. It is this amended petition (the "petition") which is before the Court for decision.

In the petition there appear a series of claims regarding the effectiveness of counsel. Simply stated they are:

(a) Counsel was ineffective at pre-trial because:

(i) he did not vigorously oppose Henderson's transfer from juvenile to criminal court;

(ii) he did not adequately argue Henderson's motion for severance, or adequately develop the record with respect to motions to suppress seized evidence and eyewitness testimony; and

(iii) he filed discovery motions which caused trial delay to be attributed to his client.

(b) Counsel was ineffective at trial because:

(i) "Mr. Henderson advised Lincoln [trial counsel] that a witness was available who could testify that Mr. Henderson was inside the grocery store at the time of the shooting. Indeed, Lincoln acknowledged that he was informed of this potentially crucial witness. In the brief answer filed by Lincoln on March 9, 1973, to People's Motion for Pre–Trial Discovery, Lincoln noted that '[t]he defendant may call the following witnesses: ... counterman in store at 306 S. Kostner.' (Petition Exhibit N at par. 2.) However, there is no indication in any part of the record that Lincoln ever investigated what testimony the 'counter-

man' at the convenience store might give, even though this testimony might have been quite significant." (Petition at 13.)

(ii) his opening statement was brief, disorganized and failed to present a theory of defense.

(iii) his cross-examinations were perfunctory, repetitive and fruitless.

(iv) his direct examinations were disorganized and unrevealing.

(v) his closing argument was unprepared, disorganized, confusing, absent a theory of defense and reliant solely on a weak reasonable doubt claim.

(c) Counsel was ineffective at sentencing because:

(i) trial counsel failed to appear and substitute counsel from the Public Defender's Office failed to argue for a new trial or an arrest of judgment.

(ii) substitute counsel was not familiar with the case and made only a brief argument in mitigation presenting no facts about Henderson's prior history and his age (15 at the time of the offense) and failing to argue that Henderson deserved a lighter sentence than Allen who pulled the trigger of the shotgun.

(d) Counsel was ineffective on direct appeal because they failed to argue:

(i) the issue of Henderson's transfer to criminal court;

(ii) the denial of pretrial motions to suppress;

(iii) the claim that one People's witness was given unacknowledged consideration for his testimony.

(e) Counsel was ineffective at post-conviction hearing.[1]

Respondent generally argues that petitioner abused the writ by filing a second petition, that incompetence of counsel on appeal is waived by petitioner's failure to raise it in his post-conviction petition and that petitioner had effective counsel at all stages of state court proceedings and, in any event, is unable to show prejudice resulting from the claimed deficiencies.

## II

■ It is clear that some claims raised by the Petition are not properly before this court. Virtually every argument that counsel was ineffective at pre-trial proceedings, at trial and sentencing is founded upon examination and analysis of the record of proceedings. These could all have been presented on direct appeal but were not raised there. The failure to do so is a procedural default which bars review in a federal habeas corpus proceeding. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2646–47, 91 L.Ed.2d 397 (1986); *Harris v. Reed,* 822 F.2d 684, 686 (7th Cir.1987) (failure to raise on direct appeal precludes state post-conviction review). The basic rule here is simple: "A procedural default that under state law bars consideration of the merits of a criminal defendant's challenge to his conviction also bars consideration by the federal court in a habeas corpus proceeding unless the defendant can show good cause for having committed the default, and that he probably would have been acquitted if he hadn't committed it." *Phillips v. Lane,* 787 F.2d 208, 211 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986).

■ Henderson may argue that his petition shows good cause for failure to raise the claim on direct appeal because his counsel on that appeal was ineffective. His challenge of his appellate counsel's performance, however, does not include an attack on the propriety of that lawyer's failure to argue that trial counsel (here references to trial counsel refer to actions of counsel at pre-trial, trial and sentencing) was ineffective. Henderson does list other grounds which he claims appellate counsel should have raised, but none of these implicates the effectiveness of trial counsel.

---

1. A reading of the Petition does not disclose a reason for this assertion. The allegations of the Petition seem to criticize the hearing judge for refusing to consider that an investigation of petitioner's claim might help his cause. Pre-

sumably it can be inferred that petitioner believes post-conviction counsel should have conducted an investigation anyway and should have amended the pro se Petition where its grammar was poor.

The decision to raise issues on appeal is one remitted to counsel, and appellate counsel's judgment on this question of raising trial counsel's effectiveness is not challenged. There is, therefore, no good cause alleged for the failure to raise the issue of ineffective trial counsel in the Illinois courts, at least insofar as such claims may be argued on the basis of the trial record.

■ The specific allegations of ineffective appellate counsel are also outside the purview of this court in this proceeding, for Henderson failed to raise these claims when he filed his state post-conviction petition. See *Murray v. Carrier, supra; Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Henderson may believe he has good cause for this procedural default because he alleges ineffectiveness of post-conviction hearing counsel. Here, too, there is no specific allegation of post-conviction hearing counsel's ineffectiveness for her failure to attack the performance of appellate counsel. Moreover, on post-conviction appeal Henderson did not argue that his post-conviction hearing counsel was ineffective. He merely argued that she had a conflict of interest which prevented vigorous advocacy while conceding she performed her duties in compliance with the requirements of Rule 651(c), Rules of the Supreme Court of Illinois, a reasonable standard of competency of counsel.

■ A careful reading of Henderson's Petition does not reveal any clear allegation of post-conviction hearing counsel's specific acts of ineffectiveness though in footnote 1, *supra*, we have assumed two such acts might be at issue. One of those two acts, the failure to amend the post-conviction petition, was not attacked on post-conviction appeal because the appellate counsel conceded compliance with the duties imposed on hearing counsel under Rule 651(c) (Ill.Rev.Stat. ch. 110A, R. 651(c)) which deals specifically with counsel's obligations to amend. The other act, failure to investigate the action of trial counsel with respect to a possible defense witness, is not specifically mentioned in Henderson's post-conviction appeal brief, and, therefore, was not "presented to the

state courts in a manner that fairly allows the court to consider its merits." *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354, 356 (7th Cir.1983) (*en banc*).

In any event, post-conviction hearing counsel did present the question of defense investigation to the state court, secured a ruling on it and thereby avoided the preclusion of the claim in this proceeding.

Most importantly, there was no claim on post-conviction appeal that post-conviction hearing counsel should have raised the issue of ineffective appellate counsel or ineffective trial counsel. Henderson's final claim of ineffective post-conviction hearing counsel, accepting *arguendo* that he has actually made it here, is waived because it was not properly raised on post-conviction appeal. See *Williams v. Duckworth,* 724 F.2d 1439 (7th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 143, 83 L.Ed.2d 82 (1984).

Henderson alleges no cause at all for this. His successive claims of ineffective counsel stop short at post-conviction appeal. He makes no claim of ineffective assistance of counsel on his post-conviction appeal.

The state procedural rules which preclude consideration of most of Henderson's claims are generally in force in Illinois and are applicable to petitioner's claims. Arguments that trial counsel was ineffective, if based on the record, must be made on direct appeal or be foregone. *United States ex rel. Devine v. DeRobertis,* 754 F.2d 764 (7th Cir.1985); *People v. Jones,* 109 Ill.2d 19, 92 Ill.Dec. 552, 485 N.E.2d 363 (1983), *cert. denied,* 475 U.S. 1090, 106 S.Ct. 1481, 89 L.Ed.2d 735 (1986). These state procedural rules advance legitimate state interests in the prompt and orderly determination of claims of error in criminal cases. They foster quick vindication of the rights of the parties, allowing necessary retrials to be held without undue delay or the loss of evidence, and thus promote finality in judgments. The rules are applied by Illinois Courts. See *Villa v. Fairman,* 810 F.2d 715, 717 (7th Cir.1987); *Cartee v. Nix,* 803 F.2d 296, 300–01 (7th Cir.), *cert.*

*denied,* —— U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1986).

 Petitioner asserts that these rules of procedural default ought not to be applied here for two reasons: (a) the respondent waived any claim under the rules; and (b) the state court did rule broadly on claims of incompetence. In its written pleadings respondent's claim of procedural default against petitioner is not as broad as the default this Court has found.[2] Procedural default claims may be forfeited by a respondent in habeas corpus. *Barrera v. Young,* 794 F.2d 1264, 1268 (7th Cir.1986). However, this Court is not bound by such forfeiture. *See Hickey v. Duffy,* 827 F.2d 234, 243 (7th Cir.1987); *id.* at 245 (Flaum, J., concurring). In any event the petitioner's argument is defeated by the assistant attorney general's repeated statement, at oral argument, that no waiver of any procedural default has been or is desired by respondent.

 The argument that the state court actually ruled on the full panoply of petitioner's claims of incompetent trial counsel is based upon some general comments of the trial judge. These remarks were made in the course of the judge's rejection of the specific argument that trial counsel failed to investigate the defense. The judge did not address the claims made here. At best, the comments are dicta and petitioner's argument that the state court ruled upon the issues raised here is a makeweight. Indeed the remarks cited were not made in ruling on the petition, they were made by the trial judge at a preliminary stage of post-conviction proceedings. This judge died before final disposition of the petition and the denial of the petition was made by another judge who made no such statements. Further, even if the argument had validity petitioner could not overcome the default arising from his failure to attack these "rulings" on post-conviction appeal.

## III

 It may be argued that this court has some form of "equitable discretion" (*Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1984)) allowing it to disregard some or all of this series of procedural defaults. This discretion is limited to cases where default is excused because cause and prejudice is found under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and cases within the narrow exception to forfeiture found in *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986) (errors posing grave risk of convicting an innocent person). The "cause and prejudice" requirements are not found here, and the trial record does not justify the application of *Murray v. Carrier.*[3]

If there were a broader discretion than this, it should not be exercised in favor of petitioner here. The Court has examined the state trial record in order to determine whether competent appellate counsel could, in the exercise of reasonable professional judgment, decide not to raise on appeal the question of competency of trial counsel and finds that such a decision is within the range of reasonable professional judgment. Nor can it be said that had the issue been raised the result of the appeal would have been different. See *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The same is true of the decision of appellate counsel not to raise the specific issues cited in par. 41 of the Petition. (*See* par. (d), p. 9 *supra.*) The petitioner's assertions of counsel's shortcomings are not accompanied by convincing arguments that these shortcomings had any actual effect or that alternative courses of action would have been clearly superior and would have altered the course of trial.

The petitioner has, in oral argument, specially urged the application of the *Murray v. Carrier* exception to his argument that counsel at sentencing was ineffective. The

---

**2.** Respondent does argue that petitioner is precluded, by virtue of procedural default, from arguing that counsel on direct appeal was incompetent.

**3.** The one claim that arguably might justify the *Murray v. Carrier* exception (the absent defense witness) is not precluded in this proceeding and is addressed in Part IV of this opinion.

argument is made in the face of some risk [4] and the Court addresses it separately.

The notion that default is excused in cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent" (*Murray v. Carrier*, 106 S.Ct. at 2650) does not appear readily applicable to errors in sentencing, an event unrelated to the determination of guilt. Yet the Supreme Court may have applied it to sentencing in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986) while recognizing the concept of an "actual innocence" exception "does not translate easily into the context of an alleged error at the sentencing phase of a trial on a capital offense." The Court held that it would not ordinarily excuse procedural defaults simply because a death sentence was levied but would consider whether the *Murray v. Carrier* exception applied.

■ This Court finds that *Smith v. Murray* has no general application beyond capital cases though this proposition is not free from doubt. The Supreme Court has distinguished capital sentencing from other forms of sentencing. Capital sentencing procedures have been likened to factual determinations of guilt or innocence. Double jeopardy limitations inapplicable to conventional sentencing procedures are applied in capital cases. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). *Compare Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). While *Smith v. Murray* refused to set aside, in capital cases, the general rule of default because that rule's application should not depend "on the nature of the penalty", it did not cast doubt on the distinctive nature of capital sentencing it found in *Bullington*.

Because we conclude that the *Murray v. Carrier* exception does not apply to non-

capital sentencing proceedings, the question of counsel's competency at sentencing is not before the Court. If it were, petitioner would have a strong case that counsel's performance was deficient, although, as will be demonstrated, petitioner would be unable to show the required prejudice.

Counsel's performance at sentencing was deficient in a number of respects. Trial counsel did not appear at the sentencing hearing, a substitute counsel appeared. Trial counsel offered no reason for his failure to appear. His presentence investigation, if any, was, at best shallow, involving discussions with petitioner and petitioner's mother. He did write a memorandum regarding the case to substitute counsel—it was a short summation of the case. Substitute counsel had no recollection of what actions, if any, he took to prepare for the sentencing hearing. The hearing itself does not contain a presentation of evidence on petitioner's behalf. The opinions of two experienced defense counsel on this subject are before this Court, and their views regarding the inadequacy of counsel's performance at sentencing are persuasive. A very disturbing failure of advocacy appears here. A more difficult question is whether petitioner could meet his burden of proving that he was prejudiced by counsel's investigation and performance. Both burdens are on petitioner. *Sullivan v. Fairman*, 819 F.2d 1382 (7th Cir.1987).

Petitioner argues that the burden of proving prejudice amounts, here, to nothing because prejudice is presumed under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). This is not so. Although the deposition of substitute counsel and the expert opinions of two experienced defense counsel, among other things, have persuaded us that counsel's performance was deficient, the record of the hearing does not demonstrate, on its face, that counsel's performance was unacceptable. There was a presentence report, the argument counsel made was reason-

---

**4.** If petitioner is resentenced he runs the risk of receiving a resentence higher than his original sentence if such a greater sentence can be justified by evidence of misconduct occurring after the original sentence. *North Carolina v. Pearce*,

395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Perhaps petitioner believes his conduct in prison over the past years would not justify an increased sentence.

ably appropriate to the case, and the record gives no indication of what else might be done. Substitution of another assistant public defender a day or so before sentence hearing is not per se prejudicial. Actual prejudice can be determined here without the undue expenditure of time and effort. In these circumstances, a presumption of prejudice is not justified.

Petitioner does offer evidence outside the trial record to support the claim of prejudice, and this claim must be analyzed in light of the facts of the case. Petitioner must prove "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068. Much of the material in the witness affidavits submitted by petitioner concerns alleged errors in the presentence report. Some of these alleged errors, i.e. the identity of petitioner's biological father, are of little apparent consequence. Other aspects of these affidavits would support petitioner's claims that he was a decent, helpful family member with some positive work experience and no gang affiliation. All of these potential witnesses in mitigation were members of petitioner's extended family including petitioner himself.

There are two difficulties with petitioner's case on this point. First, each of the witnesses had some relationship with petitioner that may have weakened their credibility and, more important, the petitioner had taken the stand in his own defense and was found not credible. A fully effective defense counsel might well have decided that this evidence in mitigation was of little value. The principal facts in mitigation

were already known to the trial judge, petitioner's youth and the fact that someone else had fired the lethal weapon. Second, a fair reading of the record makes it quite clear that the trial judge's sentence was based solely on the circumstances of the crime and the use of the weapon in committing it. It is also clear from the remarks of the court that even had all the evidence here proffered been offered, then, the sentence in all probability would be the same.[5] There is *a fortiori* no proof of a reasonable probability that the sentence would have been different.

## IV

■ Henderson makes one claim that is unaffected by default—the assertion first raised on July 16, 1980 when appointed post-conviction counsel stated that petitioner told her (on July 3, 1980) that trial counsel "failed to properly investigate his case and talk to certain witnesses that he told [trial counsel] about." (Petition Exhibit C at 3.) "He states the attorney didn't properly investigate the case and didn't talk to certain witnesses." (Petition Exhibit C at 7.)

Resolution of this matter depends upon facts outside the state court record and could not have been argued on direct appeal. The post-conviction hearing court rejected the claim on its merits as did the post-conviction appeal court. Consideration of this issue is not precluded by any procedural shortcoming.

■ While the claim is properly before this Court the nature of the claim requires further analysis. In his Memorandum in

---

5. The Court said, among other things:

"He [petitioner] should have ran [*sic*] the moment that the deceased started the altercation with him; he would not then be charged with murder.

"These two young men according to the testimony that I heard in the trial were youngsters who unfortunately did not play ball; they played with sawed-off shotguns. This was a needless killing, done with premeditation because a sawed-off shotgun only kills people, a sixteen millimeter shotgun that tore apart the stomach of the deceased who had a right to life just like these young men have a right to come

before the Court and ask for mercy and justice at this time.

"I was a member of the legislature for eighteen years. And all of us took into consideration the kinds of crimes and the sentences that—that would be necessary under various sets of circumstances. Playing with a sawed-off shotgun is not exactly the kind of citizen that I think we want to have around our community. Neither you nor the rest of society would feel safe if youngsters like these would be back on the streets. . . .

"Mr. Hays had a right to live. He was with his wife, buying groceries."

Opposition to Respondent's Motion to Deny the Petition for a Writ of Habeas Corpus, petitioner says "counsel ... then failed to investigate information supplied by Mr. Henderson at that meeting concerning a potentially exculpatory witness who could testify that Mr. Henderson was inside the grocery store at the time of the shooting outside the store." But when one turns to the Petition the allegation does not support petitioner's argument. In relevant part it states, "... There is no indication in any part of the record that [trial counsel] ever investigated what testimony the [witness] might give even though this testimony might have been quite significant." (Petition at 13.) On post-conviction appeal the court noted: "As the state trial judge noted at the post-conviction hearing there was no evidence that trial counsel did not talk to the store clerk and that even if he did talk to the store clerk, it might have been counsel's judgment that if the clerk was called as a witness he would not have helped or would not have assisted the defense."

No evidence was presented in state court that counsel failed to interview the witness. Nor did post-conviction appeal counsel argue that post-conviction trial counsel should have produced such evidence. Nor is it alleged in this petition that counsel failed to interview the witnesses; all that is stated is that there is no evidence that he did. But of course, this is precisely the state of the record of virtually every criminal trial when counsel, even the most brilliant, decides not to call a witness. There is usually no record of defense counsel's interview of uncalled witnesses.

In the absence of an allegation that counsel did fail to interview witnesses and that the testimony of these witnesses would have affected the outcome of the trial, it is difficult to find that the petition, drafted by skilled counsel mindful of the obligations under Fed.R.Civ.P. 11 (made applicable here by Rule 11 of the Rules Governing Section 2254 Cases), states facts which would justify issuance of the writ. The weakness of the relevant allegation is also distressing in light of the time frame of this case. Petitioner was tried in June, 1973. The first time he is known to raise

the question of counsel's investigation of his defense is July 3, 1980, seven years later. He raised the question in July, 1984 in his pro se habeas petition, eleven years after trial. And now, twelve-and-a-half years after the events in question, he alleges nothing more specific than that the record does not prove that counsel interviewed witnesses. This seems not to state a violation of petitioner's constitutional rights.

Discovery, investigation and hearing years later often may not yield a trustworthy resolution of the question of whether defense counsel interviewed the witnesses and will almost certainly fail to yield a trustworthy determination of whether those witnesses' testimony, if favorable to petitioner, would have affected the trial outcome. Of course, it is Henderson who will bear the loss of this lawsuit if the events of fourteen years past cannot be accurately reconstructed.

█ In this context, we consider the respondent's specific claim that the writ has been abused. The Court rejects petitioner's argument that it is waived. The filing of the amended petition does allow respondent to plead anew (Fed.R.Civ.P. 15(a)), and the pleading of abuse of writ at this time has not prejudiced the ability of the petitioner to respond to this defense.

As we have noted, petitioner filed a prior Petition for Writ of Habeas Corpus in this Court, in which he raised a variety of claims, but did not raise the ineffective assistance of counsel claim. On June 21, 1979 Judge Marshall considered the merits of the claims and dismissed the Petition (Petitioner's Exhibit F). The record is clear that petitioner did complain about the adequacy of his counsel about one year later in his July 3, 1980 conversation with post-conviction counsel, and the facts on which he based his complaint occurred at the time of trial. Indeed he appears to make no claim he was unaware of the facts, only that he was unaware of their legal significance.

While this state of affairs might excuse the filing of some claims, it is difficult to imagine that one who files claims of dubi-

ous constitutional nature, *e.g.,* Henderson's claim in 79 C 588 that the 120–day statute was violated, would be deterred by lack of knowledge from filing complaints about his counsel's failure to call a favorable witness.[6]

The law governing abuse of the writ is cloudy. In *United States ex rel. Cyburt v. Lane,* 612 F.Supp. 455 (N.D.Ill.1984) the Court held that inexcusable neglect of the petitioner to present his claim in a prior habeas petition could not justify a finding of abuse of the writ. Based upon its review of the actions of Congress in changing Rule 9(b) of the Rules Governing Section 2254 Cases (612 F.Supp. at 459–60) and applicable precedents, it concluded deliberate conduct by a petitioner "is required to support a finding of writ abuse." 612 F.Supp. at 461. Other courts reading the same materials have concluded that "inexcusable neglect" by petitioner may properly lead to a finding that he abused the writ. *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983) (*en banc*), *cert. denied sub nom. Jones v. McKaskle,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984). Moreover those who argue that deliberate withholding is not a prerequisite for finding abuse of the writ find support in the language of 28 U.S.C. Sec. 2244(b) which permits dismissal of petitions where in an earlier petition the applicant "deliberately withheld the newly asserted ground or otherwise abused the writ." (*But cf.* 28 U.S.C. § 2072 on the possible effect of Rule 9(b) on the validity of 28 U.S.C. § 2244(b).)

■ It is clear that once abuse of the writ is alleged, the petitioner bears the burden of proving that he did not abuse the writ. *United States ex rel. Cyburt v. Lane,* 612 F.Supp. at 462. Here this would require at least the testimony of the petitioner who proffers the assertion that he was aware of the facts which constitute the basis of the claim but not of their legal significance and a determination of what constitutes awareness of legal significance.

In short, the ruling on whether the writ was abused would require a decision of two troublesome questions of law and a determination of petitioner's credibility.

■ Resolution of the adequacy of pretrial investigation of the defense, the one claim still available to petitioner here, is likely to be much simpler. The legal principles are clear. Defense counsel should interview possible defense witnesses and pursue information that may aid the defense. *Crisp v. Duckworth,* 743 F.2d 580 (7th Cir.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985). A habeas corpus petitioner must show the evidence his trial counsel should have uncovered and show that it would have affected the result of the proceeding. *Keys v. Duckworth,* 761 F.2d 390, 394 (7th Cir. 1985). The burden of proof in all these matters is upon the petitioner. *Wilson v. Lash,* 457 F.2d 106, 108 (7th Cir.), *cert. denied,* 409 U.S. 881, 93 S.Ct. 211, 34 L.Ed.2d 136 (1972). Finally, there can be no dispute whether Henderson told his counsel about the witness since his attorney listed the witness in his response to the People's discovery motion.[7] The factual issues to be determined are whether counsel located and interviewed the witness or failed only after a diligent attempt to do so, whether counsel, in the exercise of competent professional judgment, decided not to call this witness, and whether if counsel did not properly deal with this potential witness, Henderson was prejudiced because the testimony of the witness would have changed the outcome of the trial. Decision of the factual issues can occur in any order. *Shepard v. Lane,* 818 F.2d 615, 620 (7th Cir.1987) (Court may decide prejudice claim first).

Accordingly, the question of abuse of the writ was deferred to allow petitioner's

---

6. The abuse of writ defense also might be applicable to petitioner's other arguments here if they were not precluded by different default rules. The Court does not now consider this question.

7. There were two witnesses listed in the discovery response. One is Davis, one of the four youths who entered the grocery store and who did testify. The other was listed as a "counterman" and his work address apparently was given. At issue here are questions regarding the "counterman."

 

counsel to pursue the issue of trial counsel's pre-trial investigation of defense witnesses.

### V

 Petitioner's able counsel here had deposed petitioner's trial counsel regarding the "counterman." In deposition counsel stated:

> I seem to have a very vague recollection of talking to an investigator ... about what he had found out about the counterman.... I vaguely remember he was saying that a counterman in the store he had talked to him and there was some very negative information; either he did not remember Curtis Henderson or he did not remember when he left the store.

Later in the deposition trial counsel recalled only that "Basically the man was no help." Trial counsel reiterated all of this at a second deposition.

Thereafter, despite the difficulties due to the passage of time, petitioner's counsel did find the counterman, deposed him and filed his deposition with the Court promptly and candidly advised the Court of its contents. This witness was Charles Ross whose description of his employment makes it clear he was the counterman referred to in the record of this case. He was the only person working in the store on the night of the shooting, which shooting he recalled.

It is not quite clear whether he was interviewed by the defense prior to trial, but it is clear that his memory of the events would not have assisted the defense. Petitioner would have been helped if the witness remembered that petitioner was in the store when the shotgun was fired. But Ross's sworn deposition reads:

> "Q. At the time of the shotgun blast, how many people were in the store?
> A. No one.
> Q. Are you sure of that?
> A. I am positive of that.
> Q. Why are you positive of that?
> A. I am positive because I started out—we have a big guard door up there. I started out, closed the door, and came back in. I didn't want to go out there. I didn't go."

Ross stated that he told this to the police.

On this record, no writ should issue for failure of trial counsel to pursue this defense.[8]

For the reasons stated above the petition is DENIED.

---

8. In considering this case the Court had before it the trial and post-conviction hearing transcript, briefs on direct and post-conviction appeal in state courts, the record in the prior federal habeas corpus case, an affidavit from a state judge, depositions of sentencing counsel, trial counsel and the witness it was first claimed might aid the defense. There were affidavits from petitioner and others, filed separately, and as appendices, the affidavits of two expert witnesses who set out their opinions of the conduct of counsel with respect to petitioner's sentencing.